UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH LEON MCDANIEL, | No. 2:19-cv-1136 JAM KJN P |
| Plaintiff, | |
| v. | |
| JOE LIZARRAGA, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

I. Introduction

Plaintiff is a state prisoner, proceeding through counsel, in this civil rights action filed under 42 U.S.C. § 1983. Presently pending is defendant Dr. Lin's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the undersigned recommends that defendant Lin's motion be granted.

II. The Verified Complaint

This case proceeds on plaintiff's original complaint alleging the following. At all times relevant herein, plaintiff was incarcerated at Mule Creek State Prison ("MCSP"). Plaintiff names as defendants Warden Joe Lizarraga, Dr. Galang, RN Martinez, Dr. Crooks, Dr. Hawkins, Dr. Ibrahim, RN Toralba, RN Micael, and Dr. Lin. Such defendants were employed at either MCSP,

1

San Joaquin General Hospital, Doctor's Hospital of Manteca, or Methodist Hospital of Sacramento. Defendants were allegedly deliberately indifferent to plaintiff's serious medical needs in connection with the care and treatment of fractures to numerous metacarpal bones in his right hand, including delays in post-operative care resulting in the severe contracture and deformity of his right hand, as well as failed surgical results on two occasions. Allegedly due to such deliberate indifference, including delays and omissions, plaintiff suffered severe contractures of his second, third, fourth and fifth digits of his right hand, and a severely deformed right hand, rendering his dominant right hand unusable, and subjecting plaintiff to severe and chronic pain. Plaintiff seeks, *inter alia*, money damages.

Allegations Pertinent to Dr. Lin

Plaintiff suffered a second assault on May 28, 2018, during which he claims he suffered a fracture of the first metacarpal bone of his right hand. (ECF No. 1 at 8.) On June 8, 2018, defendant Dr. Lin performed surgery on plaintiff's right index finger, implanting medical device hardware K-wire x2. (ECF No. 1 at 9.) On June 24, 2018, plaintiff met with Dr. Lin for post-surgery follow-up, sutures were removed, and it was noted that plaintiff was to return in two weeks for removal of the K-wire pins x2. On July 7, 2018, plaintiff filed a health care services request stating he needed the pins removed immediately. On July 11, 2018, plaintiff refused to see defendant RN Micael due to unresolved appeals and complaints against her and requested to see a different RN. On July 29, 2018, plaintiff filed another health care services request noting:

> I personally pulled-out "TWO" surgical "pins" in order to save my right index finger. YES! Mule Creek State Prison failed to take me to scheduled ORTHO appointment so I could have "Two Surgical Pins Removed", I am experiencing pain, PLEASE! No! RN MICAELS. PREA CONCERNS.

(ECF No. 1 at 9.) On July 30, 2018, plaintiff again refused to see defendant RN Micael. On August 21, 2018, plaintiff met with defendant Dr. Lin, who noted, "[Plaintiff] didn't get [his] follow-up appointment 2 weeks after last visit of (6/19/18)." (ECF No. 1 at 9.) Dr. Lin then wrote, "[Plaintiff] took pins off 3 weeks later. Follow-up in 6 weeks or as needed." (Id.) On August 21, 2018, plaintiff's primary care provider ("PCP") Dr. Dmytrienko requested plaintiff receive "urgent" physical therapy. (Id.) On August 23, 2018, plaintiff's PCP noted plaintiff had

an orthopedic follow-up with defendant Dr. Lin, who recommended plaintiff continue physical therapy and have another orthopedic consult in six weeks. On October 23, 2018, plaintiff met with defendant Dr. Lin, who noted the lack of range of motion in plaintiff's #2, #3, #4 and #5 fingers, and discussed "dorsal capsulotomies of each affected finger.  Follow-up as needed." (ECF No. 1 at 10.)  In the ninth cause of action, plaintiff contends that defendant Dr. Lin violated plaintiff's right to be free from cruel and unusual punishment in the form of on-going chronic and severe pain and the right to proper and timely medical care in a prison setting. (ECF No. 11 at 27-28.)  Specifically, defendant Dr. Lin allegedly failed to see plaintiff in a timely manner for removal of the K-wire pins x2, and did not inquire as to why plaintiff did not appear for an appointment within two weeks as ordered by Dr. Lin.  Plaintiff did not see Dr. Lin again until August 21, 2018, at which time plaintiff informed Dr. Lin that missed follow-up surgical consults had caused the prior surgeries/corrective surgery to fail.  Dr. Lin offered to "fuse the finger joint" as a corrective measure.  (ECF No. 1 at 29.)  Dr. Lin allegedly did not ensure plaintiff had a proper and timely post-operative consult; Dr. Lin's inaction and conduct constitutes deliberate indifference to plaintiff's serious medical needs, and as a result, plaintiff suffered the irreparable harm of a badly contracted 2nd metacarpal digit (index finger), and a severely deformed non-usable right hand.  Plaintiff endured months of rigorous, painful physical therapy which was unsuccessful.  (Id.)

Pertinent Allegations re Defendant RN Micael

In his eighth cause of action, plaintiff alleges that he is informed and believes that defendant RN Micael cancelled plaintiff's post-operative consult with Dr. Lin.  Plaintiff filed complaints and appeals against RN Micael regarding a PREA claim, and plaintiff believes that as a result, defendant Micael retaliated against plaintiff by cancelling plaintiff's appointment with Dr. Lin and refusing to allow plaintiff to see another RN.  (ECF No. 1 at 26-27.)

III. Motion to Dismiss

A. Legal Standards Governing Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In

3

considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).  Still, to survive dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory."  Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 956 (9th Cir. 2013) (citation omitted).

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party.  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).

B.  The Civil Rights Act

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

4

1 actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See
2 Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983
3 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no
4 affirmative link between the incidents of police misconduct and the adoption of any plan or policy
5 demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another
6 to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an
7 affirmative act, participates in another's affirmative acts or omits to perform an act which he is
8 legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy,
9 588 F.2d 740, 743 (9th Cir. 1978).

   C.  Eighth Amendment Standards

   Generally, deliberate indifference to a serious medical need presents a cognizable claim for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976.)  According to Farmer v. Brennan, 511 U.S. 825, 947 (1994), "deliberate indifference" to a serious medical need exists "if [the prison official] knows that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id.  The deliberate indifference standard "is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because 'the State's responsibility to provide inmates with medical care does not conflict with competing administrative concerns."  McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

   In order to state an Eighth Amendment claim based on medical care in prison, plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent."  Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

   The existence of a condition or injury that a reasonable doctor would find important and

5

worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic or substantial pain are indications of a serious medical need. Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing McGuckin, 974 F.2d at 1059-60) (quotation marks omitted). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002) (delays without significant harm do not constitute an Eighth Amendment violation); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (mere delay of surgery is insufficient absent evidence the denial was harmful). Thus, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett, 439 F.3d at 1096.

A difference of opinion between himself and medical staff is insufficient to state a cognizable Eighth Amendment violation. See Estelle v. Gamble, 429 U.S. 97, 107 (1976). Further, "the indifference to [plaintiff's] medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). "[E]ven gross negligence is insufficient to establish a constitutional violation." Toguchi, 391 F.3d at 1060 (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

D.  The Parties' Positions

    i.  Defendant Lin's Motion

Defendant Lin seeks dismissal on the grounds that plaintiff's allegations that Dr. Lin did not ensure a timely postsurgical visit are insufficient to state a cognizable Eighth Amendment deliberate indifference claim.  Plaintiff's complaint demonstrates that Dr. Lin was a private physician who provided care to plaintiff pursuant to a CDCR contract.  (ECF No. 11 at 6, citing ECF No. 1 at 3.)  There are no allegations, and it is not a reasonable inference, that Dr. Lin could control plaintiff's access to outside physicians, compel his attendance at scheduled appointments, or even know plaintiff's status.  Plaintiff does not allege that Dr. Lin was the cause for the delay.  Moreover, even if Dr. Lin or his office had some responsibility to contact plaintiff or the prison to inquire about the missed appointment, the failure to do so is at most negligence.  In addition, even if Dr. Lin was aware of the missed appointment, plaintiff does not allege that Dr. Lin was aware of plaintiff's condition or any need to see Dr. Lin at that time.  Dr. Lin could have assumed plaintiff's follow-up care was being provided by prison staff or even a new physician.  Plaintiff did not allege that Dr. Lin was actually aware of an excessive risk to plaintiff's health of safety yet deliberately disregarded such risk.  (ECF No. 11 at 7.)

Finally, plaintiff affirmatively alleges in his Eighth Cause of Action that the reason for the delay in plaintiff being able to see Dr. Lin was due to defendant RN Michael retaliating against plaintiff by cancelling plaintiff's "Post-Operative Consult & Exam" with Dr. Lin.  Such alleged intentional and wrongful acts of the nurse supersede any failures by Dr. Lin.  (ECF No. 11 at 7.)

    ii.  Plaintiff's Opposition

Plaintiff argues that he has stated a cognizable claim because plaintiff set out "in voluminous detail," the facts upon which he relies.  Although plaintiff concedes he had trouble with the nurse, such trouble "did not excuse Dr. Lin's deliberate indifference in not seeing plaintiff following the operation."  (ECF No. 16 at 3.)  Plaintiff argues that he has demonstrated his medical needs were serious, and that Dr. Lin's failure to respond and see plaintiff timely following the surgery exacerbated plaintiff's injury, thus meeting the elements required to state an Eighth Amendment claim at the pleading stage.  (ECF No. 16 at 4.)

         iii.  Defendant Lin's Reply

Defendant counters that plaintiff offers no additional facts demonstrating Dr. Lin's deliberate indifference other than his "failure to respond." (ECF No. 18 at 2.) In his pleading, plaintiff alleges that Dr. Lin scheduled plaintiff for a follow-up visit; it was plaintiff who did not show for this appointment; and plaintiff's allegations as to defendant Micael make it clear why plaintiff did not show up, for reasons wholly unrelated to Dr. Lin. Defendant Dr. Lin argues that he is entitled to dismissal as a matter of law because the failure of Dr. Lin to follow up on a no-show to a follow-up appointment does not constitute deliberate indifference. Plaintiff alleges no facts demonstrating that Dr. Lin's failure to see plaintiff was intentional, or that Dr. Lin would have been aware that plaintiff failed to appear on time for his follow-up visit. There are no allegations that Dr. Lin refused to see plaintiff or failed to make an appointment for follow-up care. At most, plaintiff's allegations raise an inference that Dr. Lin or his office inadvertently failed to realize plaintiff failed to show up for the follow-up appointment, which amounts to negligence, not deliberate indifference. Finally, defendant Dr. Lin reiterates that plaintiff has alleged that the reason he did not make the appointment was due to the intentional, wrongful actions of defendant Micael, a CDCR nurse who cancelled the appointment.

     E.  Discussion

Defendant Dr. Lin's motion is well-taken. Plaintiff's right hand injuries constitute a serious medical need; here, the issue is whether plaintiff has alleged sufficient facts to demonstrate Dr. Lin was deliberately indifferent. Following the June 8, 2018 surgery performed by Dr. Lin, a surgeon employed by Neogenesis Plastic Surgery, under contract with the CDCR, plaintiff had two pins remaining in his fingers that needed to be removed at a follow-up appointment. Plaintiff alleges that a follow-up appointment was scheduled with Dr. Lin.

Plaintiff argues that he demonstrates Dr. Lin's deliberate indifference by alleging Dr. Lin "failed to respond and see plaintiff, and the medical injury was exacerbated by this deliberate indifference," meeting the short and plain pleading standards under Rule 8. (ECF No. 16 at 4.) But plaintiff failed to appear at the follow-up appointment. Plaintiff does not allege that Dr. Lin was the cause for plaintiff's failure to appear, and does not demonstrate that Dr. Lin was

responsible to ensure plaintiff appear for the appointment. Indeed, based on the alleged facts, because plaintiff is a state prisoner, it would not be reasonable to infer that Dr. Lin was responsible because Dr. Lin, an outside health care provider, has no power or authority to arrange for plaintiff's attendance at a medical appointment outside the prison. Plaintiff alleges no facts demonstrating Dr. Lin was even aware plaintiff missed the follow-up appointment, and alleges no facts as to what steps Dr. Lin or his office staff should have taken even if Dr. Lin was aware or became aware that plaintiff missed the appointment. But even assuming Dr. Lin or his staff should have inquired as to plaintiff's whereabouts on the day of the missed appointment, absent facts not alleged here, such failure would be inadvertent or negligent and insufficient to demonstrate Dr. Lin's deliberate indifference. McGuckin, 974 F.2d at 1059 (an "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983) (citing Estelle, 429 U.S. at 105); see Gonzalez v. Malhotra, 2019 WL 6497877 (S.D. Cal. Dec. 3, 2019) (prisoner's claim that the doctor allegedly failed to re-schedule a return follow-up appointment with neuro ophthalmologist failed to state an Eighth Amendment claim). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

Moreover, plaintiff also pleads, on information and belief, the actual cause for plaintiff's failure to appear at the follow-up appointment with Dr. Lin: defendant RN Micael cancelled plaintiff's appointment. While plaintiff argues that defendant Micael's actions do not excuse Dr. Lin's failure to follow-up, plaintiff does not allege that Dr. Lin knew the appointment was cancelled. Moreover, because the appointment was cancelled, there would be nothing for Dr. Lin to know or follow-up on in terms of providing further medical care. As pointed out by defendant, a reasonable inference would be that plaintiff was instead seen by prison medical staff or that plaintiff had been assigned to a different physician.

For all of the above reasons, the undersigned recommends that defendant Lin's motion to dismiss the complaint for failure to state a plausible claim for deliberate indifference to a serious medical need be granted.

////

IV. Leave to Amend

Under Rule 15(a), leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has reiterated that district courts must comply with "the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." Lopez v. Smith, 203 F.3d at 1127. Therefore, leave to amend should be granted, "unless [the court] determines that a pleading could not possibly be cured by the allegation of other facts." Id. (citing Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

Here, plaintiff did not seek leave to amend. Indeed, counsel claimed he "painstakingly" laid out his claims against defendants in the complaint, and that "amendment by plaintiff is not necessary." (ECF No. 16 at 7.) Plaintiff had an opportunity in his opposition to set forth any additional facts that plaintiff could plead to support his claim against defendant Dr. Lin, but plaintiff failed to do so. Thus it appears leave to amend would be futile. On this record, the undersigned declines to recommend that plaintiff be granted leave to amend as to defendant Dr. Lin.

However, because plaintiff has not had an opportunity to amend the complaint, the undersigned recommends that Dr. Lin be dismissed without prejudice to plaintiff filing a motion to amend should plaintiff ascertain facts through discovery that support a deliberate indifference claim against Dr. Lin.

V. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendant Lin's motion to dismiss (ECF No. 11) be granted;

2. Defendant Lin be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, petitioner any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 6, 2020

/s/ Kendall J. Newman
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/mcda1135.mtd1