1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

JOSEPH LEON MCDANIEL,                     No.  2:19-cv-1136 JAM KJN P

12

Plaintiff,

13

v.

14

JOE LIZARRAGA, et al.,                        ORDER AND FINDINGS AND

15                                                          RECOMMENDATIONS

Defendants.

16
17

        Plaintiff is a state prisoner, proceeding through counsel, in this civil rights action filed

18

under 42 U.S.C. § 1983.  At present, four motions to dismiss under Federal Rule of Civil

19

Procedure 12(b)(6) are pending as to six defendants, represented by four different lawyers.  As

20

discussed below, the undersigned recommends that the motions of defendants Toralba, Martinez,

21

Dr. Galang, and Dr. Hawkins be granted on statute of limitations grounds; that defendant

22

Lizarraga's motion be granted with leave to amend, and that defendant Micael's motion be

23

denied.

24

The Verified Complaint

25

        This case proceeds on plaintiff's original complaint alleging the following.  At all times

26

relevant herein, plaintiff was incarcerated at Mule Creek State Prison ("MCSP").  Plaintiff names

27

as defendants Warden Joe Lizarraga, Dr. Galang, RN Martinez, Dr. Crooks, Dr. Hawkins, Dr.

28

Ibrahim, RN Toralba, RN Micael, and Dr. Lin.  Such defendants were employed at MCSP, San

Joaquin General Hospital, Doctor's Hospital of Manteca, or Methodist Hospital of Sacramento.

Defendants were allegedly deliberately indifferent to plaintiff's serious medical needs in

connection with the care and treatment of fractures to numerous metacarpal bones in his right

hand, including delays in post-operative care resulting in the severe contracture and deformity of

his right hand, as well as failed surgical results on two occasions.  Allegedly due to such

deliberate indifference, including delays and omissions, plaintiff suffered severe contractures of

his second, third, fourth and fifth digits of his right hand, and a severely deformed right hand,

rendering his dominant right hand unusable, and subjecting plaintiff to severe and chronic pain.

Plaintiff seeks, *inter alia*, money damages.

Governing Standards

I. Legal Standards Governing Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

"failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

(2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

1999).  Still, to survive dismissal for failure to state a claim, a complaint must contain more than

"naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

U.S. at 678.  "Dismissal is proper when the complaint does not make out a cognizable legal

theory or does not allege sufficient facts to support a cognizable legal theory."  Chubb Custom

2

1  Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 956 (9th Cir. 2013) (citation omitted).

2    For purposes of dismissal under Rule 12(b)(6), the court generally considers only

3  allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

4  subject to judicial notice, and construes all well-pleaded material factual allegations in the light

5  most favorable to the nonmoving party.  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).

6    A motion to dismiss for failure to state a claim should not be granted unless it appears

7  beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

8  entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).

9  II.  The Civil Rights Act

10   The Civil Rights Act under which this action was filed provides as follows:

11    Every person who, under color of [state law] . . . subjects, or causes
   to be subjected, any citizen of the United States . . . to the deprivation

12    of any rights, privileges, or immunities secured by the Constitution .
   . . shall be liable to the party injured in an action at law, suit in equity,

13    or other proper proceeding for redress.

14 42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege:  (1) the violation of a

15 federal constitutional or statutory right; and (2) that the violation was committed by a person

16 acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v.

17 Williams, 297 F.3d 930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil

18 rights claim unless the facts establish the defendant's personal involvement in the constitutional

19 deprivation or a causal connection between the defendant's wrongful conduct and the alleged

20 constitutional deprivation.  See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v.

21 Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  That is, plaintiff may not sue any official on the

22 theory that the official is liable for the unconstitutional conduct of his or her subordinates.  Iqbal,

23 556 U.S. at 679.  While there is no vicarious liability under § 1983, a supervisor may be held

24 liable for his own deliberate indifference if he knows and acquiesces in the unconstitutional

25 conduct of his subordinates.  See Starr v. Baca, 652 F.3d 1202, 1206-07 (9th Cir. 2011).  A

26 plaintiff must also show that the supervisor had the requisite state of mind to establish liability,

27 which turns on the requirement of the particular claim -- and, more specifically, on the state of

28 mind required by the particular claim -- not on a generally applicable concept of supervisory

1   liability.  Oregon State University Student Alliance v. Ray, 699 F.3d 1053, 1071 (9th Cir. 2012).

2   Defendants' Grounds for Dismissal

3   I.  Statute of Limitations

4       Defendants Toralba, Martinez, Dr. Galang, and Dr. Hawkins, move to dismiss this action

5   based on the statute of limitations.  As discussed below, the undersigned finds that because

6   plaintiff's claims against such four defendants accrued at the latest in 2014, such claims are

7   barred by the statute of limitations, and should be dismissed.

8       A.  Request for Judicial Notice

9       Defendant Dr. Galang asks the court to take judicial notice of CDCR public inmate

10  information confirming that plaintiff Joseph McDaniel is serving a sentence of life without the

11  possibility of parole.  (ECF No. 37-1.)  Plaintiff did not oppose or respond to the request.

12      The Court may take judicial notice of public records available on online inmate locators.

13  See United States v. Basher, 629 F.3d 1161, 1165 (9th Cir. 2011) (taking judicial notice of

14  Bureau of Prisons' inmate locator available to the public); Fed. R. Evid. 201 (court may take

15  judicial notice of facts that are capable of accurate determination by sources whose accuracy

16  cannot reasonably be questioned); see also Louis v. McCormick & Schmick Restaurant Corp.,

17  460 F.Supp.2d 1153, 1155 n.4 (C.D. Cal. 2006) (court may take judicial notice of state agency

18  records); Pacheco v. Diaz, 2019 WL 5073594 at *2 (E.D. Cal. Sept. 4, 2019) (taking judicial

19  notice of CDCR's Inmate Locator system); Foley v. Martz, 2018 WL 5111998, at *1 (S.D. Cal.

20  Oct. 19, 2018) (same).

21      The CDCR inmate locator website reflects that plaintiff is serving a sentence of life

22  without parole.  (See https://inmatelocator.cdcr.ca.gov).  Defendant's request to take judicial

23  notice is granted.  The undersigned finds that plaintiff was sentenced to life without the

24  possibility of parole.

25      B.  Standards Governing Statute of Limitations

26      Because 42 U.S.C. § 1983 does not have its own limitations period, this court applies

27  California's "statute of limitations for personal injury actions, along with the forum state's law

28  regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent

4

1   with federal law." Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004).  California's statute of

2   limitations for personal injury actions is two years.  Cal. Civ. Proc. Code § 335.1; Jones v.

3   Blanas, 393 F.3d at 927; Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004).

4           Such limitation period is statutorily tolled for a period of two years for a person who is

5   "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a

6   term less than for life."  Cal. Civ. Proc. Code § 352.1.  Only prisoners sentenced to life without

7   the possibility of parole are excluded from such additional two-year tolling provision.  See

8   Brooks v. Mercy Hospital, 1 Cal. App. 5th 1, 7, 204 Cal. Rptr. 3d 289, 293 (Cal. App. 2016)

9   (holding the statutory language of § 352.1(a) excludes those sentenced to life without the

10  possibility of parole, but is applicable to prisoners serving a sentence of life with the possibility of

11  parole).

12          In addition, prisoners are entitled to tolling during the exhaustion of mandatory

13  administrative remedies.  Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005) ("the applicable

14  statute of limitations must be tolled while a prisoner completes the mandatory [administrative]

15  exhaustion process" required under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C.

16  § 1997e(a)).

17          This court must apply California law governing equitable tolling.  Jones v. Blanas, 393

18  F.3d at 927.  Under California law, equitable tolling "'reliev[es] plaintiff from the bar of a

19  limitations statute when, possessing several legal remedies he, reasonably and in good faith,

20  pursues one designed to lessen the extent of his injuries or damage.'"  Cervantes v. City of San

21  Diego, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting Addison v. California, 21 Cal. 3d 313, 317

22  (1978)); Dimcheff v. Bay Valley Pizza, Inc., 84 F. App'x 981, 983 (9th Cir. 2004).  "Under

23  California law, tolling is appropriate in a later suit when an earlier suit was filed and where the

24  record shows:  (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to

25  the defendant in gathering evidence to defendant against the second claim; and (3) good faith and

26  reasonable conduct by the plaintiff in filing the second claim."  Azer v. Connell, 306 F.3d 930,

27  936 (9th Cir. 2002) (citation and internal quotation marks omitted); Fink v. Shedler, 192 F.3d

28  911, 916 (9th Cir. 1999).  A plaintiff is only entitled to equitable tolling if all three prongs of the

test are satisfied.  Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1140 (9th Cir. 2001).  Plaintiff bears the burden to plead facts demonstrating he is entitled to equitable tolling.  Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir. 1993).  "California courts apply equitable tolling 'to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice.'"  Jones v. Blanas, 393 F.3d at 928 (quoting Lantzy v. Centex Homes, 31 Cal. 4th 363, 370 (2003)).

"Although state law determines the length of the limitations period, 'federal law determines when a civil rights claim accrues.'"  Azer, 306 F.3d at 936 (quoting Morales v. City of Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir. 2000)).  "Under federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action."  Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009) (citation omitted); Maldonado, 370 F.3d at 955.  Finally, on a motion to dismiss, this court may resolve the statute of limitations issue only where the "running of the statute [of limitations] is apparent on the face of the complaint."  United States ex rel. Air Control Tech., Inc. v. Pre Con Industries, Inc., 720 F.3d 1174, 1178 (9th Cir. 2013) (internal quotation and citations omitted).

C.  Four Moving Defendants

a.  Allegations Pertinent to Defendant Toralba

Following plaintiff's June 6, 2014 surgery on his right hand, Dr. Crooks scheduled plaintiff to have his surgical K-wire pins removed in twenty-one days.  (ECF No. 1 at ¶ 23.)  On July 3, 2014, plaintiff presented to Dr. Hawkins at MCSP, complaining that pins were "protruding from under the skin of his right hand."  (ECF No. 1 at ¶ 24.)  Dr. Hawkins requested plaintiff have an orthopedic consult within twenty-one days.  (ECF No. 1 at ¶¶ 25, 27.)  On July 15, 2014, plaintiff requested to see a doctor about his right hand injury; at that time, the removal of the K-wire pins was allegedly seven days overdue for removal.  (ECF No. 1 at ¶ 26.)

On July 24, 2014, plaintiff filed a physician's request for services form informing defendant Toralba, a Registered Nurse, that "the pins are coming thru right hand, had operation on June 6, 2014."  (ECF No. 1 at ¶ 28.)  Plaintiff alleges defendant Toralba denied plaintiff treatment, noting "Inmate, you saw your doctor on 7/03/14 and (he) recommended (you) for a

1  follow-up to ortho regarding same complaint.  Please wait for your appointment."  (Id.)  The pins

2  were removed on September 2, 2014.  (ECF No. 1 at ¶ 30.)

3      On April 3, 2015, defendant Toralba filed a nursing visit progress note after plaintiff

4  presented at the clinic for pain medication renewal after his pain medications ran out.  (ECF No. 1

5  at ¶ 38.)

6      In his seventh cause of action, plaintiff alleges that defendant Toralba was deliberately

7  indifferent to plaintiff's on-going chronic and severe pain and failed to provide timely and proper

8  medical care by failing to provide plaintiff with an emergency medical appointment either with

9  her or plaintiff's primary care provider.  (ECF No. 1 at ¶ 143.)  "[I]nstead of providing plaintiff a

10  person to person exam," defendant Toralba was deliberately indifferent by returning plaintiff's

11  health care services request, informing him to wait for his appointment.  (ECF No. 1 at ¶¶ 146-

12  47.)  At that time, plaintiff contends the protruding pins were twenty days overdue for removal,

13  and were becoming infected.  (ECF No. 1 at ¶¶ 146-47.)

14          b.  Allegations Pertinent to Defendant Martinez

15      Defendant Dr. Galang performed surgery on plaintiff's right hand on June 6, 2014,

16  implanting three K-wire pins, and informed plaintiff that sutures would be removed in ten days,

17  then in an additional fourteen days, the K-wire pins would be removed.  (ECF No. 1 at ¶¶ 19-20.)

18  Defendant Kelly Martinez, a Registered Nurse, failed to update plaintiff's post-operative follow-

19  up appointment with Dr. Galang, during Martinez' duties as MCSP Receiving & Release RN for

20  inmates returning to the prison following off-site medical appointments, when plaintiff returned

21  to MCSP from the June 6, 2014 surgery.  (ECF No. 1 at ¶ 22.)  Plaintiff saw defendant Dr.

22  Crooks on June 20, 2014, for suture removal, and Dr. Crooks scheduled plaintiff to have his

23  surgical K-wire pins removed in twenty-one days.  (ECF No. 1 at ¶ 23.)  Dr. Crooks allegedly

24  failed to ensure plaintiff received the follow-up care Dr. Crooks ordered.  (ECF No. 1 at ¶ 24.)

25      In his third cause of action, plaintiff alleges that defendant Martinez was deliberately

26  indifferent to plaintiff's on-going chronic and severe pain and failed to provide timely and proper

27  medical care by failing to "inquire into" plaintiff's next post-operative exam with Dr. Galang.

28  (ECF No. 1 at ¶ 86.)  On June 6, 2014, plaintiff informed defendant Martinez that Dr. Galang

would see plaintiff for suture removal in ten days and for pin removal fourteen days thereafter. (ECF No. 1 at ¶ 88.)  Plaintiff informed nonparty PA Harris on June 26, 2014, that plaintiff's sutures were to be removed by Dr. Galang that day.  (ECF No. 1 at ¶ 89.)  PA Harris filed a request for services for plaintiff's consult with Dr. Galang, but plaintiff saw defendant Dr. Crooks instead.  (ECF No. 1 at ¶ 90-91.)  Dr. Crooks removed the sutures and splint, and noted plaintiff was to be seen in three weeks for K-wire pin removal.  (ECF No. 1 at ¶ 92.)  On June 20, 2014, upon return from Dr. Crooks' appointment, plaintiff told defendant Martinez that plaintiff had not timely seen Dr. Galang, but instead saw Dr. Crooks for a late appointment, and as a result, the scheduled removal of the pins would be overdue.  (ECF No. 1 at ¶ 94.)  Plaintiff asked defendant Martinez to please check the schedule for the proper follow-up appointment time.  (Id.) Defendant Martinez failed to ensure plaintiff was scheduled for a post-op appointment with Dr. Crooks, and as a result, plaintiff suffered a 67-day delay in having the pins removed.  (ECF No. 1 at ¶ 95.)  Defendant Martinez failed to schedule plaintiff with either Dr. Galang or Dr. Crooks for the pin removal, demonstrating her deliberate indifference to plaintiff's serious medical needs. (ECF No. 1 at ¶ 96-97.)  As a result, plaintiff suffers severe pain and decreased use of his dominant right hand.  (ECF No. 1 at ¶ 99.)

> ### c. Allegations Pertinent to Defendant Dr. Galang

Defendant Dr. Galang performed surgery on plaintiff's right hand on June 6, 2014, implanting three K-wire pins, and informed plaintiff that the sutures would be removed in ten days, then in an additional fourteen days the K-wire pins would be removed.  (ECF No. 1 at ¶¶ 19-20.)  Defendant Dr. Galang allegedly did not ensure that plaintiff received timely removal of the sutures or the K-wire pins.  (ECF No. 1 at ¶ 21.)  Plaintiff also alleges that defendants RN Martinez and Dr. Crooks failed to ensure plaintiff received timely post-operative appointments. (ECF No. 1 at ¶¶ 22, 24, 95, 102-03.)  On September 2, 2014, 67 days after the pins were supposed to be removed, plaintiff was seen by Dr. Galang, who removed the remaining two pins (the other pin "pushed out by itself."  (ECF No. 1 at ¶ 30.)

In his second cause of action, plaintiff alleges that defendant Dr. Galang was deliberately indifferent to plaintiff's on-going chronic and severe pain and failed to provide timely and proper

8

medical care by failing to "note on the report of operation that plaintiff would require a timely post-operative follow-up consult exam and treatment to first, remove the sutures, and then fourteen (14) days later," remove the K-wire pins.  (ECF No. 1 at ¶ 72.)  Dr. Galang did not timely remove plaintiff's sutures or the K-wire pins.  (ECF No. 1 at ¶ 73.)  Rather, the K-wire pins were not removed until after plaintiff's body pushed one of the pins out, and until Dr. Galang removed the pins 67 days too late.  (ECF No. 1 at ¶¶ 73-74.)  The alleged delay in removing these pins caused, *inter alia*, permanent, severe injury to plaintiff's dominant right hand.  (ECF No. 1 at ¶ 75.)

In his third cause of action, plaintiff complains that he did not see defendant Dr. Galang, but saw defendant Dr. Crooks instead.  (ECF No. 1 at ¶ 91.)  Dr. Crooks removed plaintiff's sutures four days too late, and removed the right hand and short-arm splint, noting "see in 3 weeks (for K-wire pins x 3 removal)."  (ECF No. 1 at ¶ 92.)  After Dr. Crooks left the room, Dr. Crooks' personal nurse re-wrapped plaintiff's right hand and lower arm in the WHO Brace splint system."  (ECF No.  at ¶ 93.)

d.  Allegations Pertinent to Defendant Dr. Hawkins

Following surgery on plaintiff's hand by Dr. Galang, plaintiff was to have the K-wire pins removed 24 days thereafter.  Plaintiff claims Dr. Galang failed to ensure that plaintiff received timely suture and pin removal.  (ECF No. 1 at ¶ 21.)  Plaintiff claims that defendant RN Martinez failed to schedule plaintiff for his follow-up visit.  (ECF No. 1 at ¶ 22.)  On June 20, 2014, plaintiff was sent to Dr. Crooks, who removed plaintiff's sutures, and scheduled plaintiff for removal of the K-wire pins in twenty-one days.  (ECF No. 1 at ¶23.)  Plaintiff claims Dr. Crooks failed to ensure plaintiff receive post-operative follow-up exam and treatment.  (ECF No. 1 at ¶ 24.)  On July 3, 2014, plaintiff saw Dr. Hawkins at MCSP and complained about the pins "protruding from under the skin of his right hand," and requested timely post-op care with Dr. Galang or Dr. Crooks.[1]  (ECF No. 1 at ¶ 25.)  After the July 3, 2014 appointment, Dr. Hawkins requested plaintiff have an orthopedic consult within twenty-one days.  (ECF No. 1 at ¶¶ 25, 27.)

---

[1]  Although the complaint states plaintiff met with Dr. Hawkins on "July 3, 2015," the 2015 appears to be a typographical error.  (ECF No. 1 at ¶ 25.)

1    On July 15, 2014, plaintiff requested to see a doctor about his hand injury, complaining that the

2    K-wire pins were seven days overdue for removal.  (ECF No. 1 at ¶ 26.)

3            On July 24, 2014, plaintiff completed a health care services request form informing

4    defendant RN Toralba that the pins were coming through his right hand following his surgery on

5    June 6, 2014.  (ECF No. 1 at ¶ 28.)  Defendant Toralba replied on plaintiff's request form that on

6    July 3, 2014, plaintiff was seen by the doctor who "recommended [plaintiff] for a follow-up to

7    ortho regarding same complaint.  Please wait for your appointment."  (ECF No. 1 at ¶ 28.)  The

8    pins were removed by Dr. Galang on September 2, 2014.  (ECF No. 1 at ¶¶ 30, 95.)

9            In his fifth cause of action, plaintiff incorporates paragraphs 1 through 114 by reference,

10   and alleges that his new primary care physician, Dr. Hawkins, failed to file a timely request for

11   services form for plaintiff to be seen, and failed to ensure plaintiff was timely seen, by either Dr.

12   Galang or Dr. Crooks for removal of the K-wire pins.  (ECF No. 1 at ¶¶ 115-19.)  At the time

13   plaintiff was seen by Dr. Hawkins on July 3, 2014, plaintiff informed the doctor plaintiff was in

14   severe pain, and that the removal of the pins was three days overdue.  (ECF No. 1 at ¶ 116.)  As a

15   result, the removal of pins was delayed for 67 days longer that Dr. Galang initially prescribed,

16   subjecting plaintiff to severe right hand finger contractures and 58 painful physical therapy

17   sessions.  (ECF No. 1 at ¶¶ 122; 125-26.)

18            e.  Discussion

19            Because plaintiff is sentenced to life without the possibility of parole, his claims are

20   subject to a two-year statute of limitations period.  Cal. Civ. Proc. § 352.1(a).  Plaintiff's claim

21   against Toralba accrued on July 24, 2014, when Toralba responded to plaintiff's health care

22   services request form.  Plaintiff's claim against Martinez accrued on June 20, 2014, when

23   Martinez allegedly failed to act in response to plaintiff's request to look into his follow-up

24   medical appointment.  Plaintiff's allegations against Dr. Galang last accrued on September 2,

25   2014, when Dr. Galang removed the pins from plaintiff's hand.  Defendant Dr. Hawkins' sole

26   encounter with plaintiff was on July 3, 2014.  Thus, all of the claims raised against defendants

27   Toralba, Martinez, Dr. Galang, and Dr. Hawkins accrued in 2014, no later than September 2,

28   2014.

1   The pins were removed from plaintiff's hand on September 2, 2014; liberally construing

2   such date as the accrual date for plaintiff's claims, plaintiff's complaint was due on or before

3   September 2, 2016.  However, plaintiff's complaint was not filed until June 20, 2019, over two

4   years and nine months too late.

5   Moreover, as pointed out by defendant Dr. Galang, plaintiff's own allegation states that

6   plaintiff was diagnosed with a contracted hand by October 21, 2014.  (ECF No. 39 at 2, citing

7   ECF No. 1 at ¶ 31.)  Thus, even using the October 21, 2014 date as the date of accrual, plaintiff's

8   June 20, 2019 complaint was untimely-filed.

9   Plaintiff's oppositions offer no substance.  Plaintiff merely repeats that his "injuries are

10   ongoing and easily within the applicable statute of limitations."  (ECF Nos 19, 31, 38 & 41 at 2.)

11   Plaintiff cites no legal authorities to support such statement.  Plaintiff points to no specific facts as

12   to incidents falling within the two-year limitations period.  Because it is clear from the face of

13   plaintiff's complaint that his claims against defendants Toralba, Martinez, Dr. Galang, and Dr.

14   Hawkins were not filed within the two year statute of limitations period, defendants' motions to

15   dismiss should be granted unless plaintiff has demonstrated he is entitled to equitable tolling.

16   Here, plaintiff does not argue that he is entitled to equitable tolling.  Both the complaint

17   and plaintiff's oppositions do not allege facts demonstrating plaintiff was pursuing another

18   remedy in another forum, or offer any explanation for the delay.  In addition, plaintiff did not

19   address, or even provide, the time frame involved in exhausting administrative remedies.  Given

20   the lengthy delay in bringing this action, it is unlikely that the administrative exhaustion period

21   would offer plaintiff relief.  In any event, plaintiff has failed to meet his burden to plead facts

22   demonstrating he is entitled to equitable tolling.  Hinton, 5 F.3d at 395 ("That burden does not

23   arise only after a motion to dismiss; rather, the plaintiff 'must plead with particularity the

24   circumstances [warranting tolling].'" (internal citation omitted).)

25   For all of the above reasons, defendants' motions to dismiss their claims as barred by the

26   statute of limitations should be granted.[2]

27   _____

28   [2]  Because plaintiff's claims against these four defendants are barred by the statute of limitations, the court need not address such defendants' alternative grounds for dismissal.

1   II.  Failure to State a Claim

2          Defendants Lizarraga and Micael argue that plaintiff's claims against them should be

3   dismissed because plaintiff failed to identify any specific actions by the warden that violated

4   plaintiff's rights, and because plaintiff failed to allege any medical care, medical treatment, or

5   encounter with defendant Micael that would constitute deliberate indifference to plaintiff's

6   serious medical needs.  As discussed below, defendants' motion to dismiss should be granted.

7          A.  Eighth Amendment Standards

8          Generally, deliberate indifference to a serious medical need presents a cognizable claim

9   for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

10  Estelle v. Gamble, 429 U.S. 97, 104 (1976.)  According to Farmer v. Brennan, 511 U.S. 825, 947

11  (1994), "deliberate indifference" to a serious medical need exists "if [the prison official] knows

12  that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that risk by failing to

13  take reasonable measures to abate it."  Id.  The deliberate indifference standard "is less stringent

14  in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated

15  individuals because 'the State's responsibility to provide inmates with medical care does not

16  conflict with competing administrative concerns."  McGuckin v. Smith, 974 F.2d 1050, 1060 (9th

17  Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled on other grounds by

18  WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

19         In order to state an Eighth Amendment claim based on medical care in prison, plaintiff

20  must first "show a serious medical need by demonstrating that failure to treat a prisoner's

21  condition could result in further significant injury or the unnecessary and wanton infliction of

22  pain.  Second, the plaintiff must show the defendant's response to the need was deliberately

23  indifferent."  Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting Jett v. Penner,

24  439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

25         The existence of a condition or injury that a reasonable doctor would find important and

26  worthy of comment or treatment, the presence of a medical condition that significantly affects an

27  individual's daily activities, and the existence of chronic or substantial pain are indications of a

28  serious medical need.  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (citing

1  McGuckin, 974 F.2d at 1059-60) (quotation marks omitted).  Deliberate indifference is "a state of

2  mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for

3  the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S.

4  312, 319 (1986)).  "Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d

5  1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of

6  the facts from which the inference could be drawn that a substantial risk of serious harm exists,'

7  but that person 'must also draw the inference.'"  Id. at 1057 (quoting Farmer, 511 U.S. at 837).

8  "'If a prison official should have been aware of the risk, but was not, then the official has not

9  violated the Eighth Amendment, no matter how severe the risk.'"  Id. (quoting Gibson v. County

10  of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

11        Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S.

12  at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a

13  plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th

14  Cir. 2002) (delays without significant harm do not constitute an Eighth Amendment violation);

15  Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (mere delay

16  of surgery is insufficient absent evidence the denial was harmful).  Thus, "[a] prisoner need not

17  show his harm was substantial; however, such would provide additional support for the inmate's

18  claim that the defendant was deliberately indifferent to his needs."  Jett, 439 F.3d at 1096.

19        A difference of opinion between himself and medical staff is insufficient to state a

20  cognizable Eighth Amendment violation.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976).

21  Further, "the indifference to [plaintiff's] medical needs must be substantial.  Mere 'indifference,'

22  'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter

23  Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  "[E]ven

24  gross negligence is insufficient to establish a constitutional violation."  Toguchi, 391 F.3d at 1060

25  (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

26  ////

27  ////

28  ////

13

1    1. Defendant Lizarraga

2         A. Allegations Pertinent to Defendant Lizarraga

3    Plaintiff alleges that defendant Lizarraga was the warden of MCSP and was "responsible

4    for ensuring that the inmate[s] under his care received the proper, and timely medical care" from

5    doctors and nurses at MCSP and off-site hospitals and medical care facilities.  (ECF No. 1 at ¶ 5.)

6         In his first cause of action, plaintiff incorporates paragraphs 1 through 58, inclusive, as to

7    defendant Lizarraga.  (ECF No. 1 at ¶ 59.)  Plaintiff alleges that defendant Lizarraga was

8    deliberately indifferent to plaintiff's serious medical needs to be treated for ongoing chronic and

9    severe pain and to provide timely medical care from surgical hospitals under contract with the

10   CDCR and MCSP:  San Joaquin General Hospital; Doctor's Hospital of Manteca; and Methodist

11   Hospital of Sacramento.  (ECF No. 1 at ¶ 60.)  Defendant Lizarraga allegedly had been made

12   aware, numerous times, of complaints by other MCSP inmates suffering bad outcomes from

13   "contracting . . . serious infections from these contract hospitals," and "constantly being denied

14   timely follow-[up] care for surgical procedures that did require timely follow-up care for removal

15   . . . of Medical Device Hardware," such as the K-wire pins in this case.  (ECF No. 1 at ¶ 61.)

16   Defendant Lizarraga had knowledge of such lack of care issues, yet did nothing to correct such

17   issues with the contract surgeons and medical care providers.  (ECF No. 1 at ¶ 62.)  The surgeons

18   and hospitals with which defendant Lizarraga contracted left the K-wire pins in plaintiff's hands

19   for about 88 days, approximately 67 days longer than prescribed by Dr. Galang.  (ECF No. 1 at ¶

20   63.)  Defendant Lizarraga had a duty to ensure that doctors and hospitals contracted to care for

21   MCSP inmates provided medical care based on the community standard of care.  (ECF No. 1 at ¶

22   65.)  Such conduct by defendant Lizarraga demonstrates deliberate indifference to plaintiff's

23   Eighth Amendment rights, resulting in plaintiff suffering severe pain, and decreased use of his

24   dominant right hand which was rendered severely deformed and non-usable.  (ECF No. 1 at ¶¶

25   66-67.)

26   ////

27   ////

28   ////

14

B. <u>The Parties' Positions</u>

i. <u>Defendant Lizarraga's Motion</u>

Defendant Lizarraga contends that plaintiff cannot state a cognizable civil rights claim based solely on Lizarraga's supervisory role because plaintiff fails to establish the necessary causal connection between Lizarraga and any of the alleged Eighth Amendment violations.  (ECF No. 40-1 at 8-9.)  In his cause of action against Lizarraga, despite incorporating by reference paragraphs 1-58, none of the allegations in those paragraphs involved Lizarraga.  (ECF No. 40-1 at 9.)  Plaintiff alleges no facts demonstrating Lizarraga had any direct involvement in the myriad treatment decisions or medical appointments alleged.  Instead, plaintiff attempts to hold the warden responsible for the actions of several doctors not even employed at MCSP.  (ECF No. 40-1 at 9.)  Plaintiff's general allegations that defendant Lizarraga had "knowledge" of "lack of care issues" concerning plaintiff and "other inmates," is insufficient because such allegations are devoid of specific facts "as to how or when" Lizarraga "became aware of [such facts] or what specific action [Lizarraga] could have taken to correct" such issues.  (ECF No. 40-1 at 9.)  Such conclusory allegations are similar to those allegations in <u>Iqbal</u>, and "far from the standard for pleading a sufficient supervisory liability claim as established in <u>Starr</u>."  (ECF No. 40-1 at 9.)[3]

ii. <u>Plaintiff's Opposition</u>

Plaintiff contends that "the complaint set out in voluminous detail the factual allegations against these defendants."  (ECF No. 41 at 2.)  After setting forth the paragraph numbers and pages of the complaint that set forth the allegations against defendant Lizarraga, plaintiff states that "[a]ll the factual representations made in the voluminous complaint are enough to keep them in this case and defeat the Dismissal Motion."  (ECF No. 41 at 2-3.)  After setting forth the standards governing deliberate indifference, plaintiff reiterates he "has set out in his complaint, in exhaustive detail, the facts upon which he relies," and "[i]t is true that plaintiff was treated with deliberate indifference by these defendants."  (ECF No. 41 at 4.)

---

[3]  Defendant Lizarraga also argues that to the extent plaintiff attempts to raise allegations against defendant Lizarraga based on events occurring prior to June 20, 2015, such claims are barred by the statute of limitations.  (ECF No. 40-1 at 9.)

1    Finally, plaintiff states that amendment is not necessary inasmuch as he "specifically laid

2    out the factual road map that supports his complaint."  (ECF No. 41 at 7.)

3                            iii.  Defendant Lizarraga's Reply

4    Defendant counters that plaintiff's "boilerplate opposition" fails to specifically address

5    defendants' arguments or the "deficiencies of the specific allegations against them."  (ECF No. 43

6    at 1-2.)  Such failure concedes the arguments and is grounds for granting the motion.  Ramirez v.

7    Ghilotti Bros. Inc., 941 F. Supp. 1197, 1212 (N.D. Cal. 2013); E.D. L.R. 230(l).  Simply referring

8    to the entirety of the complaint, which names ten individual defendants and alleges various

9    incidents over a period of years, is insufficient to rebut defendants' motion, and reiterate that the

10   complaint is a "shotgun" pleading which violates Rule 8 of the Federal Rules of Civil Procedure.

11   (ECF No. 43 at 2.)  Further, defendant Lizarraga argues that plaintiff points to no specific

12   allegation demonstrating the warden was directly responsible for providing medical treatment or

13   took any action or failed to act in a way that denied plaintiff medical treatment.  (ECF No. 43 at

14   3.)  Rather, plaintiff seeks to hold defendant Lizarraga responsible based entirely on his role as

15   warden of MCSP.  Such allegations are insufficient to state a plausible section 1983 claim under

16   Hansen, 885 F.2d at 646.

17                     C.  Discussion:  Defendant Lizarraga

18   The undersigned is persuaded that plaintiff's allegations as to defendant Lizarraga are

19   insufficient.  As argued by defendant, plaintiff's conclusory allegations that defendant Lizarraga

20   had "knowledge" of "lack of care issues" concerning plaintiff and "other inmates," is insufficient

21   because plaintiff fails to set forth specific facts demonstrating how or when defendant Lizarraga

22   became aware of specific facts, or what specific action defendant Lizarraga could or should have

23   taken to fix such issue.  It is not unconstitutional for a warden to defer to the judgment of health

24   care professionals or rely on prison policy.  See, e.g., Peralta v. Dillard, 744 F.3d 1076, 1086-87

25   (9th Cir. 2014) ("Supervisors aren't vicariously liable for constitutional violations under section

26   1983[,] [b]ut they can be liable for their own conduct." (internal citations omitted)); McGee v.

27   Adams, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on

28   medical opinions of health care professionals unless "they have a reason to believe (or actual

1    knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner")

2    (internal quotation marks omitted).  Rather, plaintiff must set forth specific facts demonstrating

3    defendant Lizarraga acted with a culpable state of mind and the causal connection between the

4    acts or omissions of defendant Lizarraga that allegedly constitute a violation of plaintiff's Eighth

5    Amendment rights.  Plaintiff has not done so.  Accordingly, defendant Lizarraga's motion to

6    dismiss should be granted.

7         2.  Defendant Micael

8              A.  Allegations Pertinent to Defendant Micael

9         Plaintiff alleges defendant Ms. L. Micael is an RN employed at MCSP as a Clinic RN.

10   (ECF No. 1 at ¶ 12.)  Following another inmate assault, plaintiff underwent another right hand

11   surgery on June 8, 2018.  (ECF No. 1 at ¶ 49.)  On July 7, 2018, plaintiff filed a health care

12   services request form, noting "I need these pins out of my hand immediately, and I also need

13   dressing changes."  (ECF No. 1 at ¶ 51.)  On July 11, 2018, plaintiff "refused to see defendant

14   Ms. L. Micael RN due to unresolved appeals and complaints against her and requested to see

15   another RN."  (ECF No. 1 at ¶ 52.)  On July 29, 2018, plaintiff filed another health care services

16   request form, noting that because MCSP failed to take plaintiff to his scheduled ortho

17   appointment to have the pins removed, plaintiff "personally pulled out two surgical pins in order

18   to save [his] right index finger."  (ECF No. 1 at ¶ 53.)  Plaintiff added that he was "experiencing

19   pain," and "PLEASE!  No!  RN MICAELS.  PREA CONCERNS."  (ECF No. 1 at ¶ 53.)  On July

20   30, 2018, plaintiff "again refused to meet with RN Micael due to still un-resolved PREA

21   concerns," and asked to see a doctor instead "due to possible infection."  (ECF No. 1 at ¶ 54.)

22   Plaintiff saw the surgeon for post-operative follow-up on August 21, 2018.  (ECF No. 1 at ¶ 55.)

23        In his eighth cause of action, plaintiff alleges that defendant Micael's duties include

24   processing requests for health care services forms, providing assistance to primary care providers,

25   pre-screening inmates during vitals checks and then filing that information into the inmate's

26   electronic unit health record, and documenting progress notes on paper.  (ECF No. 1 at ¶ 152.)

27   On information and belief, plaintiff alleges that defendant Micael "retaliated against plaintiff by

28   cancelling plaintiff's post-operative consult & exam" after plaintiff's second surgery, which was

17

1  performed by Dr. Lin.  (ECF No. 1 at ¶¶ 152-53, 155.)  Plaintiff also alleges defendant Micael

2  retaliated against plaintiff by refusing to allow plaintiff to see another nurse, and then cancelled

3  plaintiff's post-operative appointment with Dr. Lin.  (ECF No. 1 at ¶ 160.)  Because plaintiff did

4  not see Dr. Lin until August 21, 2018, plaintiff was forced to pull out the K-wire pins himself to

5  prevent the loss of use of another finger.  (ECF No. 1 at ¶ 161.)  As a result of defendant Micael's

6  actions, plaintiff suffered a severely contracted index finger and months of painful physical

7  therapy that did not work.  (ECF No. 1 at ¶ 163-64.)

8  　　　　　　　　　　　　B.  The Parties' Positions

9  　　　　　　　　　　　　　　i.  Defendant Micael's Motion

10  　　　　Defendants argue that plaintiff's claim against defendant Micael fails to allege particular

11  facts demonstrating that defendant Micael was deliberately indifferent to plaintiff's serious

12  medical needs.[4]  (ECF No. 40-1 at 10.)  Plaintiff alleges that defendant Micael "cancelled"

13  plaintiff's post-op consult exam and treatment" with Dr. Lin in retaliation for "complaints and

14  appeals."  (ECF No. 1 at 151-63.)  But plaintiff also alleges that he refused to see defendant

15  Micael when plaintiff requested medical services on July 11 and 30, 2018.  Defendants argue that

16  plaintiff's refusals concede he never saw defendant Micael and thus she could not have failed to

17  examine or treat him.  (ECF No. 40-1 at 10.)  Plaintiff fails to allege any other manner in which

18  defendant Micael could have been aware of plaintiff's serious medical need, let alone that the

19  alleged appointment cancellation amounted to the intentional disregard of a serious medical

20  need."  (ECF No. 40-1 at 10.)  Because plaintiff fails to meet all of the elements of a deliberate

21  indifference claim, defendant Micael's motion should be granted.

22

23  [4]  Defendant Micael also argues that plaintiff attempts to state a retaliation claim against Micael,
24  which also fails to state a cognizable retaliation claim because plaintiff did not argue all of the
   required elements of a retaliation cause of action.  However, when the court screened plaintiff's
25  complaint, the court found plaintiff stated potentially cognizable Eighth Amendment claims.  The
   court did not find that plaintiff stated a cognizable retaliation claim.  Indeed, in plaintiff's Eighth
26  Cause of Action, plaintiff pleads only an Eighth Amendment claim.  Plaintiff is represented by
   counsel, so the court will not construe counsel's vague reference to "retaliation" within such
27  cause of action as an effort to plead a retaliation claim.  Moreover, a retaliation claim against
   defendant Micael is not properly joined in this action alleging Eighth Amendment violations
28  against multiple defendants.  Fed. R. Civ. P. 18, 19 & 20.

ii.  Plaintiff's Opposition

Plaintiff contends that "the complaint set out in voluminous detail the factual allegations against these defendants."  (ECF No. 41 at 2.)  After setting forth the paragraph numbers and pages of the complaint that set forth the allegations against defendant Micael, plaintiff states that "[a]ll the factual representations made in the voluminous complaint are enough to keep them in this case and defeat the Dismissal Motion."  (ECF No. 41 at 2-3.)  After providing the standards governing deliberate indifference, plaintiff reiterates he "has set out in his complaint, in exhaustive detail, the facts upon which he relies," and "[i]t is true that plaintiff was treated with deliberate indifference by these defendants."  (ECF No. 41 at 4.)

Finally, plaintiff states that amendment is not necessary inasmuch as he "specifically laid out the factual road map that supports his complaint."  (ECF No. 41 at 7.)

iii.  Defendant Micael's Reply

Defendant reiterates the objection that plaintiff's complaint is a shotgun pleading and plaintiff's opposition is mere boilerplate that is grounds to grant the motion to dismiss.  (ECF No. 43 at 1-2.)  Defendant contends plaintiff fails to state a claim against defendant Micael because plaintiff refused to see Micael, and fails to address how Micael could be deliberately indifferent to plaintiff's serious medical needs if plaintiff refused to be seen by Micael.

C.  Discussion:  Defendant Micael

Despite plaintiff's failure to file an opposition of substance, a reasonable inference can be drawn from plaintiff's allegations that he refused to see RN Micael, that defendant Micael was the initially assigned nurse to both of plaintiff's requests for care dated July 11 and 30, 2018, and therefore defendant Micael was aware of plaintiff's serious medical needs because of such requests, despite plaintiff's refusal to be seen by Micael.  In addition, plaintiff alleges defendant Micael refused to allow plaintiff to see another nurse.  Moreover, given plaintiff's allegations, on information and belief, that defendant Micael cancelled the follow-up appointment in retaliation for plaintiff's administrative grievances against Micael, in addition to her myriad duties as an RN, it is unclear at the pleading stage that plaintiff's allegation must fail simply because Micael did not treat plaintiff on either of those dates.  Rather, taking plaintiff's allegations as true, plaintiff

1    alleges that defendant Micael interfered with plaintiff's ability to obtain timely medical care.

2    While defendant Micael may be able to demonstrate at summary judgment that she was not aware

3    of plaintiff's requests on July 11 or 30, 2018, that she did not interfere with plaintiff's medical

4    care, or that she did not cancel plaintiff's follow-up appointment as alleged, the undersigned finds

5    plaintiff has alleged sufficient facts to rebut defendant Micael's motion at this stage of the

6    proceedings.

7    III.  Leave to Amend

8    　　　Plaintiff has not previously amended.  Generally, leave to amend "shall be freely given

9    when justice so requires."  Fed. R. Civ. P. 15(a).  Therefore, leave to amend should be granted,

10   "unless [the court] determines that a pleading could not possibly be cured by the allegation of

11   other facts."  Lopez v. Smith, 203 F.3d at 1127, citing Doe v. United States, 58 F.3d 494, 497 (9th

12   Cir. 1995).

13   　　　Because plaintiff's claims against defendants Toralba, Martinez, Dr. Galang, and Dr.

14   Hawkins are based upon their alleged failure to adequately treat plaintiff in 2014, plaintiff's

15   claims are barred by the statute of limitations and cannot be cured by amendment.  See Hoang v.

16   Bank of Am., N.A., 910 F.3d 1096, 1103 (9th Cir. 2018) ("[L]eave to amend need not be granted

17   when 'any amendment would be an exercise in futility,' such as when the claims are barred by the

18   applicable statute of limitations." (citing Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d

19   1049, 1060 (9th Cir. 2008) and Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir.

20   1998)).

21   　　　As to defendant Lizarraga, because plaintiff provided no additional facts in his opposition,

22   including any specific facts suggesting Lizarraga's "knowledge of and acquiescence in

23   unconstitutional conduct by his subordinates," Starr, 652 F.3d at 1207, in connection with

24   plaintiff's medical care at issue here, it is unclear whether plaintiff can amend to state a

25   cognizable civil rights claim against defendant Lizarraga.  However, because amendment should

26   be freely granted, and plaintiff has not amended the pleading to date, plaintiff is granted leave to

27   file an amended complaint as to defendant Lizarraga provided plaintiff can allege such facts

28   demonstrating a constitutional violation and arising within the limitations period.

1       Plaintiff is not required to amend.  However, if plaintiff chooses to amend, plaintiff is

2   informed that the court cannot refer to a prior pleading in order to make plaintiff's amended

3   complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself

4   without reference to any prior pleading.  This requirement exists because, as a general rule, an

5   amended complaint supersedes the original complaint.  See Ramirez v. County of San

6   Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the

7   original, the latter being treated thereafter as non-existent.'" (internal citation omitted)).  Once

8   plaintiff files an amended complaint, the original pleading no longer serves any function in the

9   case.  Therefore, in an amended complaint, as in an original complaint, each claim and the

10   involvement of each defendant must be sufficiently alleged.

11  IV.  Conclusion

12       For the foregoing reasons, IT IS HEREBY ORDERED that defendant Dr. Galang's

13   request to take judicial notice (ECF No. 37-1) is granted.

14       Further, IT IS RECOMMENDED that:

15       1.  Defendant Toralba's motion to dismiss (ECF No. 17) be granted.

16       2.  Defendant Martinez' motion to dismiss (ECF No. 30) be granted.

17       3.  Defendant Dr. Galang's motion to dismiss (ECF No. 37) be granted.

18       4.  Defendant Dr. Hawkins' motion to dismiss (ECF No. 40) be granted.

19       5.  Defendants Toralba, Martinez, Dr. Galang, and Dr. Hawkins be dismissed with

20   prejudice.

21       6.  Defendant Micael's motion (ECF No. 40) be denied.

22       7.  Defendant Lizarraga's motion to dismiss (ECF No. 40) be granted, defendant Lizarraga

23   be dismissed without prejudice, and plaintiff be granted leave to amend as to defendant Lizarraga.

24   If plaintiff chooses to amend as to defendant Lizarraga, plaintiff be granted sixty days' leave to

25   file an amended complaint that is complete in and of itself.

26       8.  This action be remanded to the undersigned for further scheduling.

27       These findings and recommendations are submitted to the United States District Judge

28   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty** days after

being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 14, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/mcda1136.mtd2-5

22