1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JOSEPH LEON MCDANIEL,                        No. 2:19-cv-1136 JAM KJN P

12                    Plaintiff,

13           v.                                     ORDER AND FINDINGS AND
                                                    RECOMMENDATIONS
14    JOE LIZARRAGA, et al.,

15                    Defendants.

16

17           Plaintiff, a state prisoner, proceeds through counsel in this civil rights action filed under

18    42 U.S.C. § 1983.  Defendant Crooks' motion to dismiss is fully briefed.[1]  As discussed below,

19    the undersigned recommends that the defendant Crooks' motion be granted.

20                                    The Verified Complaint

21           At all times relevant herein, plaintiff was incarcerated at Mule Creek State Prison

22    ("MCSP").  Plaintiff named as defendants Warden Joe Lizarraga, Dr. Galang, RN Martinez, Dr.

23    Crooks, Dr. Hawkins, Dr. Ibrahim, RN Toralba, RN Micael, and Dr. Lin.  Such defendants were

24    employed at MCSP, San Joaquin General Hospital, Doctor's Hospital of Manteca, or Methodist

25    Hospital of Sacramento.  Defendants were allegedly deliberately indifferent to plaintiff's serious

26    _____

27    [1]  Plaintiff filed an opposition.  (ECF No. 69.)  Defendant Dr. Crooks filed a reply (ECF No. 70),
      and objections to plaintiff's evidence submitted in support (ECF No. 71).  Defendant filed a
28    second copy of such objections, which the court strikes as duplicative.  (ECF No. 72.)

                                                   1

medical needs in connection with the care and treatment of fractures to numerous metacarpal bones in his right hand, including alleged delays in post-operative care resulting in the severe contracture and deformity of his right hand, as well as failed surgical results on two occasions. Allegedly due to such deliberate indifference, including delays and omissions, plaintiff suffered severe contractures of his second, third, fourth and fifth digits of his right hand, and a severely deformed right hand, rendering his dominant right hand unusable, and subjecting plaintiff to severe and chronic pain.  Plaintiff seeks, *inter alia*, money damages.

Procedural Background

Defendant Ibrahim filed an answer on December 11, 2019.  (ECF No. 10.)

On August 7, 2020, the undersigned recommended that defendant Dr. Lin's motion to dismiss be granted "without prejudice to plaintiff filing a motion to amend should plaintiff ascertain facts through discovery that support a deliberate indifference claim against Dr. Lin." (ECF No. 42 at 10.)  On April 30, 2021, the district court denied defendant Lin's motion to dismiss without prejudice.  (ECF No. 94.)

On October 15, 2020, the undersigned recommended that the motions to dismiss filed by defendants Toralba, Martinez, Dr. Galang, and Dr. Hawkins be granted on statute of limitations grounds; that defendant Micael's motion to dismiss be denied, and that defendant Lizarraga's motion to dismiss be granted with leave to amend.  (ECF No. 54.)  The undersigned noted that plaintiff should be granted leave to file an amended complaint as to defendant Lizarraga, provided plaintiff can allege facts demonstrating a constitutional violation arising within the limitations period.  (ECF No. 54 at 20.)  On April 30, 2021, the district court adopted the undersigned's findings and recommendations.  Defendants Toralba, Martinez, Dr. Galang, and Dr. Hawkins were dismissed with prejudice.  The motion to dismiss filed by defendant Micael, an RN initially assigned to address plaintiff's health care requests dated July 11 and 30, 2018, was denied. Defendant Warden Lizarraga's motion to dismiss was denied without prejudice.

On August 30, 2021, plaintiff's motion for reconsideration of the April 30, 2021 order was denied by the district court.  (ECF No. 108.)

////

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Governing Standards

I. Legal Standards Governing Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).  Still, to survive dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory."  Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 956 (9th Cir. 2013) (citation omitted).

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party.  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).

////

////

3

1    II. <u>The Civil Rights Act</u>

2        The Civil Rights Act under which this action was filed provides as follows:

3            Every person who, under color of [state law] . . . subjects, or causes
             to be subjected, any citizen of the United States . . . to the deprivation
4            of any rights, privileges, or immunities secured by the Constitution .
             . . shall be liable to the party injured in an action at law, suit in equity,
5            or other proper proceeding for redress.

6    42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege: (1) the violation of a

7    federal constitutional or statutory right; and (2) that the violation was committed by a person

8    acting under the color of state law. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Jones v.</u>

9    <u>Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil

10   rights claim unless the facts establish the defendant's personal involvement in the constitutional

11   deprivation or a causal connection between the defendant's wrongful conduct and the alleged

12   constitutional deprivation. <u>See</u> <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989); <u>Johnson v.</u>

13   <u>Duffy</u>, 588 F.2d 740, 743-44 (9th Cir. 1978). That is, plaintiff may not sue any official on the

14   theory that the official is liable for the unconstitutional conduct of his or her subordinates. <u>Iqbal</u>,

15   556 U.S. at 679. While there is no vicarious liability under § 1983, a supervisor may be held

16   liable for his own deliberate indifference if he knows and acquiesces in the unconstitutional

17   conduct of his subordinates. <u>See</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1206-07 (9th Cir. 2011). A

18   plaintiff must also show that the supervisor had the requisite state of mind to establish liability,

19   which turns on the requirement of the particular claim -- and, more specifically, on the state of

20   mind required by the particular claim -- not on a generally applicable concept of supervisory

21   liability. <u>Oregon State University Student Alliance v. Ray</u>, 699 F.3d 1053, 1071 (9th Cir. 2012).

22                            Defendant Crooks' Motion to Dismiss

23       Defendant Dr. Crooks moves to dismiss on the grounds that plaintiff's claims are barred

24   by the statute of limitations, and fail to state a claim upon which relief can be granted. As

25   discussed below, the undersigned finds that because plaintiff's claims against defendant Crooks

26   are barred by the statute of limitations, the motion to dismiss should be granted, and the

27   undersigned declines to address defendant's alternative argument.

28   ////

                                          4

1    I. Statute of Limitations

2         A. Request for Judicial Notice

3         Initially, defendant asks the court to take judicial notice of CDCR public inmate

4    information showing that plaintiff Joseph McDaniel is serving a sentence of life without the

5    possibility of parole. (ECF No. 58-1 at 4.) Plaintiff did not oppose or respond to the request.

6         The court may judicially notice a fact not subject to reasonable dispute because it "(1) is

7    generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

8    readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R.

9    Evid. 201(b). The Court may take judicial notice of public records available on online inmate

10   locators. See United States v. Basher, 629 F.3d 1161, 1165 (9th Cir. 2011) (taking judicial notice

11   of Bureau of Prisons' inmate locator available to the public); see also Pacheco v. Diaz, 2019 WL

12   5073594 at *2 (E.D. Cal. Sept. 4, 2019) (taking judicial notice of CDCR's Inmate Locator

13   system); Foley v. Martz, 2018 WL 5111998, at *1 (S.D. Cal. Oct. 19, 2018) (same).

14        The CDCR inmate locator website confirms that plaintiff is serving a sentence of life

15   without parole. (See https://inmatelocator.cdcr.ca.gov). Defendant's request to take judicial

16   notice is granted. The undersigned finds that plaintiff was sentenced to life without the

17   possibility of parole. (ECF No. 57-1 at 4.)

18        B. Defendant's Objections to Plaintiff's Exhibits

19        Defendant objects that the exhibits plaintiff appended to his opposition are improper on a

20   motion to dismiss, and raises multiple evidentiary objections under the Federal Rules of

21   Evidence. (ECF No. 71 at 2.)

22        In Exhibit A1, plaintiff provided a copy of Dr. Crooks June 20, 2014 orthopedic

23   consultation. (ECF No. 69-1.) Exhibit A2 is a copy of Dr. Crooks orthopedic consultation dated

24   October 3, 2014. (ECF No. 69-2.) Next, plaintiff provided a document entitled "List of Exhibits

25   - Exhibits 'A'" in which he recites a list of documents, including nursing assessments, various

26   CDCR forms, consent forms, and consultation forms, dated from May 22, 2014, to October 23,

27   2018. (ECF No. 69-3 at 1-3.) Plaintiff also provided a "List of Exhibits - Exhibit 'B'" in which

28   he lists a series of interdisciplinary progress notes, physical therapy and CDC physical therapy

5

forms from February 20, 2015, through December 4, 2018.  (ECF No. 69-4.)  Next, plaintiff provided multiple copies of handwritten and typewritten physical therapy clinic forms.  (ECF No. 69-5.)  Plaintiff also provided two declarations signed by plaintiff, each of which recites various medical appointments and medical records, as well as physical therapy visits and records therefrom.  (ECF Nos. 69-6, 69-7.)

Defendant's objections are well-taken.  As set forth above, on a motion to dismiss, the court considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.  Here, plaintiff's complaint did not include exhibits, and plaintiff has not requested the court take judicial notice of any particular exhibit or exhibits.  The undersigned declines to convert the instant motion to a motion for summary judgment.  In addition, none of the exhibits appended to plaintiff's opposition are properly subject to judicial notice.  Fed. R. Evid. 201.  Plaintiff's declarations lack foundation and authentication and include hearsay, in violation of Rules 602, 801 and 901 of the Federal Rules of Evidence.

Defendant's objections are sustained, and the court has not considered plaintiff's exhibits in addressing defendant's motion.

C.  Standards Governing Statute of Limitations

Because 42 U.S.C. § 1983 does not have its own limitations period, this court applies California's "statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law."  Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004).  California's statute of limitations for personal injury actions is two years.  Cal. Civ. Proc. Code § 335.1; Jones v. Blanas, 393 F.3d at 927; Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004).

Such limitation period is statutorily tolled for a period of two years for a person who is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life."  Cal. Civ. Proc. Code § 352.1.  Only prisoners sentenced to life without the possibility of parole are excluded from such additional two-year tolling provision.  See Brooks v. Mercy Hospital, 1 Cal. App. 5th 1, 7, 204 Cal. Rptr. 3d 289, 293 (Cal. App. 2016) (holding the statutory language of § 352.1(a) excludes those sentenced to life without the

possibility of parole, but is applicable to prisoners serving a sentence of life with the possibility of parole).

In addition, prisoners are entitled to tolling during the exhaustion of mandatory administrative remedies. Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005) ("the applicable statute of limitations must be tolled while a prisoner completes the mandatory [administrative] exhaustion process" required under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a)).

This court must apply California law governing equitable tolling. Jones v. Blanas, 393 F.3d at 927. Under California law, equitable tolling "'reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'" Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting Addison v. California, 21 Cal. 3d 313, 317 (1978)); Dimcheff v. Bay Valley Pizza, Inc., 84 F. App'x 981, 983 (9th Cir. 2004). "Under California law, tolling is appropriate in a later suit when an earlier suit was filed and where the record shows: (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defendant against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." Azer v. Connell, 306 F.3d 930, 936 (9th Cir. 2002) (citation and internal quotation marks omitted); Fink v. Shedler, 192 F.3d 911, 916 (9th Cir. 1999). A plaintiff is only entitled to equitable tolling if all three prongs of the test are satisfied. Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1140 (9th Cir. 2001). Plaintiff bears the burden to plead facts demonstrating he is entitled to equitable tolling. Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir. 1993). "California courts apply equitable tolling 'to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice.'" Jones v. Blanas, 393 F.3d at 928 (quoting Lantzy v. Centex Homes, 31 Cal. 4th 363, 370 (2003)).

"Although state law determines the length of the limitations period, 'federal law determines when a civil rights claim accrues.'" Azer, 306 F.3d at 936 (quoting Morales v. City of Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir. 2000)). "Under federal law, a claim accrues when

the plaintiff knows or should know of the injury that is the basis of the cause of action." Douglas

v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009) (citation omitted); Maldonado, 370 F.3d at 955.

In other words, "the tort cause of action accrues, and the statute of limitation begins to run, when

the wrongful act or omission results in damages." Wallace v. Kato, 549 U.S. 384, 391 (2007).

Finally, on a motion to dismiss, this court may resolve the statute of limitations issue only where

the "running of the statute [of limitations] is apparent on the face of the complaint." United

States ex rel. Air Control Tech., Inc. v. Pre Con Industries, Inc., 720 F.3d 1174, 1178 (9th Cir.

2013) (internal quotation and citations omitted).

>    D.   Allegations as to Dr. Crooks

>    Plaintiff alleges the following in his original complaint. (ECF No. 1.)

>    On May 22, 2014, plaintiff was assaulted at MCSP. Subsequently, plaintiff underwent an

open reduction internal fixation on his right hand which included implanted hardware on June 6,

2014, by Dr. Galang. (¶ 19.) Dr. Galang planned for plaintiff to return in ten days for suture

removal and an additional fourteen days for hardware removal. (¶ 20.)

>    On June 16, 2014, a physician's request for services form was completed for plaintiff to

be seen by Dr. Galang for post-operative care. (¶ 90.) Instead, plaintiff was taken to defendant

Dr. Crooks on June 20, 2014, for suture removal. (¶ 91.) Dr. Crooks was employed as a

physician and surgeon at San Juan General Hospital in French Camp, California, and was under

contract with the CDCR. (¶ 8.) Plaintiff noted that the sutures were approximately four days

overdue for removal. Dr. Crooks removed the sutures and the right hand short arm splint, and

noted that plaintiff should be seen in three weeks for the hardware removal. (¶¶ 92, 104.) After

Dr. Crooks left the room, his personal nurse re-wrapped plaintiff's right hand and lower arm in

the WHO Brace splint system. (¶¶ 93, 105.)

>    Dr. Galang did not ensure that plaintiff received post-operative follow-up exam for suture

removal and K-wire pins x3 removal. (¶ 21.) Defendant Martinez failed to ensure plaintiff was

scheduled for a post-op follow-up consult with Dr. Crooks, and failed to schedule plaintiff with

either Dr. Galang or Dr. Crooks for hardware removal. (¶¶ 95, 96, 108.) Defendant Dr. Crooks

////

failed to timely remove plaintiff's hardware. (¶¶ 105, 107.)  After further delay, on September 2, 2014, Dr. Galang removed two of the pins, as the other pin had pushed out by itself.  (¶¶ 25-30.)

Dr. Crooks' failure to timely provide such follow-up post-operative care resulted in the hardware being left in plaintiff's hand too long, and left the WHO Brace short-arm splint system on for an "abnormally long, prolonged period of time." (¶¶ 102, 110.)  Dr. Crooks' failure to timely provide such care resulted in plaintiff suffering "severe right hand contractures." (¶ 110.)

Plaintiff includes no other specific charging allegations as to defendant Dr. Crooks.  The following allegations as to other defendants and nonparties, however, are relevant to the instant motion to dismiss.

On October 21, 2014, plaintiff met with Dr. Rudas at MCSP. (¶ 31.)  Dr. Rudas filed a progress note requesting an immediate orthopedic referral, and noted:

> Plaintiff had hand surgery at SJGH on 6/6/14 with K-WIRE pinnings.  Post-Operatively, he has had a very poor result.  He is now left with contractures of his right #3, #4, and #5 fingers, leaving him with a right hand functional disability.

(¶ 31.)  On December 15, 2014, plaintiff met with orthopedic hand specialist Dr. Ibrahim "for a Pre-Op Consult for a corrective/revisionist surgery of the right hand severe (sic) contractures after the Plaintiff suffered the contracture injury from prolonged immobilizations and the over-due placement of K-wire pins x 3 left in Plaintiff's right hand." (¶ 34.)  Plaintiff underwent corrective repair surgery on January 30, 2015. (¶ 35.)

Subsequently, on May 28, 2018, plaintiff was again assaulted and sustained a fracture to his right hand. (¶ 47.)  On June 8, 2018, plaintiff underwent a second hand surgery. (¶ 49.)

E.  <u>Discussion</u>

As argued by defendant Dr. Crooks, plaintiff's claims against defendant Dr. Crooks are similar to those levied against Dr. Galang.  The last date of treatment by Dr. Crooks occurred in 2014; plaintiff's hardware was removed from plaintiff's hand on September 2, 2014.  Thus, absent facts not pled, Dr. Crooks' alleged involvement ended on September 2, 2014.

////

Moreover, plaintiff's own allegation states that plaintiff was diagnosed with a contracted hand by October 21, 2014. (ECF No. ECF No. 1 at ¶ 31.) Defendant Crooks points out that plaintiff was then seen by an orthopedic hand specialist on December 15, 2014, for a pre-op consult for plaintiff's severe hand contractures.

Because plaintiff is serving life without the possibility of parole, his claims are subject to a two-year statute of limitations period. Cal. Civ. Proc. § 352.1(a). As discussed above, the accrual date of a § 1983 cause of action is a question of federal law, and "accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." Douglas, 567 F.3d at 1109.

Plaintiff first saw Dr. Crooks on June 2, 2014, when Dr. Galang could not or would not see plaintiff. (ECF No. 69 at 12:12-15.) In his complaint, plaintiff claims Dr. Crooks failed to provide a post-op consult for the timely removal of plaintiff's K-wire pins; in his opposition, plaintiff now claims that Dr. Crooks discussed with plaintiff "the fact that many further appointments with Dr. Crooks would indeed be taking place in the near future." (ECF No. 69 at 12.)[2] But plaintiff identifies no appointments with Dr. Crooks after December 15, 2014.

Plaintiff contends that his claims against Dr. Crooks did not accrue until 2018 when plaintiff was informed by a new physical therapist that further physical therapy would be useless. But plaintiff's own allegations establish that plaintiff was aware, or should have been aware, no later than December 15, 2014, of the injury to his right hand, including contractures, based on the following.

On October 21, 2014, Dr. Rudas noted plaintiff had a very poor result from the June 6, 2014 surgery; on November 21, 2014, plaintiff sought emergency medical care "for severe pain from severely contracted right hand" (ECF No. 1 at ¶ 33). On December 15, 2014, plaintiff met

---

[2]  Plaintiff also now claims that on October 3, 2014, plaintiff met with Dr. Crooks for an orthopedic consult, Dr. Crooks noted x-ray demonstrates fracture is healed, and in the recommendation section, Dr. Crooks noted "Warm soaks, stretching, return to clinic P.R.N.," and explained to plaintiff that "if he follows through and does this on a regular basis, he will regain full flexion." (ECF No. 69 at 8.) But even if the court converted this motion to a motion for summary judgment to consider Dr, Crooks' later medical record, plaintiff identifies no treatment by Dr. Crooks after 2014.

1  with defendant Dr. Ibrahim "for a Pre-Op Consult for a corrective/revisionist surgery of the right

2  hand severe contractures," after which Dr. Ibrahim performed such surgery on January 30, 2015.

3  (ECF No. 1 at ¶¶ 34, 35.)  Thus, plaintiff was aware of the harm or injuries to his right hand in

4  2014, yet waited to file suit until 2019, exceeding the two-year limitations period.

5       Such allegations confirm that under the two-year statute of limitations, plaintiff should

6  have filed the instant action no later than October 21, 2016, because plaintiff was diagnosed by

7  Dr. Rudas with the poor surgical result, contracted hand, and functional disability on October 21,

8  2014.  But even assuming, *arguendo*, that the date of accrual was December 15, 2014, when

9  plaintiff met with Dr. Ibrahim to consult on the corrective/ revisionist surgery to repair the very

10  injury at issue here, or January 30, 2015, the date such corrective surgery took place, plaintiff's

11  complaint was due no later than January 30, 2017.

12       Finally, plaintiff saw Dr. Soltanian on August 18, 2015, for treatment "due to the bad

13  outcome of the first surgery of June 6, 2014" (ECF No. 1 at ¶ 42), and began a hunger strike on

14  September 21, 2015, to protest the pain he was suffering due to the two failed surgeries (ECF No.

15  1 at ¶ 43).  Such allegation further confirm that plaintiff was aware of the failed surgeries by no

16  later than September of 2015.[3]  Even liberally construing the accrual date as September of 2015,

17  plaintiff's complaint is time-barred.

18       Plaintiff's argument that he was unaware of his cause of action or legal claim until

19  November 20, 2018, is unavailing.  (ECF No. 69 at 11.)  A person knows, or should know, of the

20  injury that forms the basis for an action when he knows "both the existence and the cause of his

21  injury," not upon becoming aware of the applicable law that gives rise to a claim.  United States

22  v. Kubrick, 444 U.S. 111, 113 (1979); see also Lukovsky v. City & Cnty. of San Francisco, 535

23  F.3d 1044, 1051 (9th Cir. 2008).  Plaintiff's allegations make clear that plaintiff knew his right

24  hand was contracted after the first surgery and after the delay in removing the surgical pins and

25  the prolonged immobilization of his hand, which he alleges caused the contractures.[4]

---

26  [3] Indeed, by March 3, 2016, an x-ray report noted well-healed fractures "present with chronic

27  deformity."  (ECF No. 1 at 8, ¶ 44.)

28  [4] In his opposition, plaintiff now claims that Dr. Crooks "intentionally concealed" "the actual

1

*Tolling*

2      In his opposition, plaintiff recites various tolling provisions, but fails to demonstrate that

3   he is entitled to tolling as to his claims against Dr. Crooks.  Although he refers to "equitable

4   tolling" in his subheading, he fails to address or offer facts demonstrating he was pursuing

5   another legal remedy and Dr. Crooks had notice.  Cervantes, 5 F.3d at 1275 (noting that equitable

6   tolling under California state law "'reliev[es] plaintiff from the bar of a limitations statute when,

7   possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen

8   the extent of his injuries or damage.'")

9      Plaintiff does not dispute that he is serving life without the possibility of parole, but

10   argues that the application of Brooks, 1 Cal. App. 5th at 7, violates the Ex Post Facto Clause

11   because he was convicted in 1991.  (ECF No. 69 at 19.)  Such argument is inapposite.  Over 25

12   years ago, California provided unlimited tolling of the statute of limitations for incarcerated

13   prisoners during imprisonment; however, effective January 1, 1995, the law was amended to limit

14   tolling for prisoners to two years.  Cal. Code Civil Proc. § 352.1.  Such amendment provided that

15   the prisoner's status is viewed at the time the cause of action accrued, and included the provision

16   "less than for life," excluding prisoners serving terms of life without the possibility of parole.  Id.

17   Thus, § 352.1 is appropriately applied because plaintiff did not dispute that he was sentenced to

18   life without the possibility of parole at the time the instant cause of action accrued.  In Brooks, the

19   state court simply clarified that inmates serving less than a life sentence remain eligible for the

20   additional two years of tolling for incarceration.  Id. (holding the statutory language of Cal. Code

21   Civ. Proc. § 352.1(a) excludes those sentenced to life without the possibility of parole, but is

22   applicable to prisoners serving a sentence of life with the possibility of parole).

23      Plaintiff provides no additional facts to demonstrate that the administrative appeal process

24   would grant him sufficient tolling.  Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005) (holding

25

26   extent of plaintiff's injuries," and "the extent of said injury was concealed until October 2018."
    (ECF No. 69 at 16.)  Such allegation was not included in his complaint.  Moreover, as noted by
    the district court on April 30, 2021, "plaintiff's complaint does not provide facts sufficient to

27   conclude that he could not have discovered the basis of his claim before November of 2016."
    (ECF No. 94 at 10.)  Plaintiff's request for reconsideration of such order was denied on August

28   30, 2021.

1   that limitations period tolled while completing the required administrative appeal process). But

2   even if the administrative exhaustion process took a year, an additional year of tolling would not

3   render the complaint timely because plaintiff did not file this action until June 20, 2019.

4         Thus, plaintiff failed to meet his burden to plead facts demonstrating he is entitled to

5   equitable tolling. Hinton, 5 F.3d at 395 ("That burden does not arise only after a motion to

6   dismiss; rather, the plaintiff 'must plead with particularity the circumstances [warranting

7   tolling].'" (internal citation omitted).)

8         F.  Conclusion

9         The allegations in plaintiff's verified complaint confirm that plaintiff's hand injury was

10   known and well-documented in 2014. Because it is clear from the face of plaintiff's complaint

11   that his claims against defendant Dr. Crooks were not filed within the two-year statute of

12   limitations period, and plaintiff failed to demonstrate he is entitled to tolling, defendant's motion

13   to dismiss claims as barred by the statute of limitations should be granted.

14   II.  Failure to State a Claim

15         Defendant Crooks also argues that plaintiff's allegations fail to demonstrate Dr. Crooks

16   was deliberately indifferent to plaintiff's serious medical needs. Because plaintiff's claims

17   against Dr. Crooks are barred by the statute of limitations, the court need not address defendant

18   Crooks' alternative ground for dismissal.

19   III.  Leave to Amend

20         In light of plaintiff's new contention that Dr. Crooks "intentionally concealed" the

21   condition of plaintiff's hand, the undersigned considers whether plaintiff should be granted leave

22   to amend his claims as to Dr. Crooks. Plaintiff contends that up until the new physical therapist

23   informed plaintiff that his physical therapy was deemed a failure, plaintiff "still believed his hand

24   would rehabilitate to 100% use like Dr. Crooks said it would be." (ECF No. 69 at 14.) Plaintiff

25   claims that on October 3, 2014, Dr. Crooks told plaintiff "he would regain full use of his hand if

26   he just followed through with the soaking and stretching." (ECF No. 69 at 14.)

27         Dr. Crooks' alleged diagnosis and recommendation in October of 2014, standing alone,

28   does not demonstrate Dr. Crooks intended to conceal the true nature of plaintiff's injury.

Although plaintiff claims Dr. Crooks recommended plaintiff use warm soaks and stretching, plaintiff does not identify Dr. Crooks as ordering physical therapy for plaintiff.

Importantly, it appears that Dr. Ibrahim, an orthopedic surgeon and hand specialist, disagreed with Dr. Crooks' recommendation and diagnosis, because by December 15, 2014, Dr. Ibrahim determined plaintiff required corrective surgery for the severe contractures. Plaintiff identifies no involvement by Dr. Crooks after October 3, 2014.

Dr. Ibrahim performed the corrective surgery on January 15, 2015. And, by March 3, 2016, an x-ray report noted well-healed fractures "present with chronic deformity." (ECF No. 1 ¶ 44.) In addition, by 2018, plaintiff had sustained another injury to his hand, and another surgery was performed.

The complaint makes clear that plaintiff was aware of the pain and contractures of his right hand in 2014, caused by the initial surgery and subsequent delay in removing the K-wire pins and prolonged immobilization of his hand. Plaintiff also could have discovered the basis of his claim in 2015, as discussed above, but no later than March 3, 2016, when an x-ray showed plaintiff had a chronic deformity.

For all of these reasons, the undersigned declines to recommend that plaintiff be granted leave to amend his claims as to Dr. Crooks.

IV. <u>Defendant Micael</u>

On April 30, 2021, the district court denied defendant Micael's motion to dismiss. Plaintiff was granted an extension of time to file a motion for reconsideration. Plaintiff's July 2, 2021 motion for reconsideration was denied by the district court on August 30, 2021. In light of the district court's order, defendant Micael is granted an extension of time to file a responsive pleading until further order of court.

V. <u>Orders and Recommendations</u>

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Crooks' request for judicial notice (ECF No. 57-1) is granted.

2. The Clerk of the Court shall edit ECF No. 71 to read "Objections to Plaintiff's Exhibits." (ECF No. 71.)

1    3. Defendant Crooks' filing (ECF No. 72) is stricken as duplicative of ECF No. 71.

2    4. Plaintiff's exhibits appended to his opposition (ECF No. 69-1 to 69-7) are disregarded.

3    5. Defendant Micael is granted an extension of time to file a responsive pleading until

4    further order of court.

5    Further, IT IS RECOMMENDED that:

6    1. Defendant Crooks' motion to dismiss (ECF No. 58) be granted; and .

7    2. Defendant Crooks be dismissed from this action with prejudice.

8    These findings and recommendations are submitted to the United States District Judge

9    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen** days

10   after being served with these findings and recommendations, any party may file written

11   objections with the court and serve a copy on all parties.  Such a document should be captioned

12   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

13   objections shall be filed and served within fourteen days after service of the objections.  The

14   parties are advised that failure to file objections within the specified time may waive the right to

15   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16   Dated: September 1, 2021

17

18                                    KENDALL J. NEWMAN
                                      UNITED STATES MAGISTRATE JUDGE
19

20   /mcda1136.mtd6.r

21

22

23

24

25

26

27

28