1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH LEON MCDANIEL,                    No.  2:19-cv-1136 JAM KJN P

12                    Plaintiff,

13        v.                                  FINDINGS AND RECOMMENDATIONS

14   JOE LIZARRAGA, et al.,

15                    Defendants.

16

17        Plaintiff, a state prisoner, proceeds through counsel in this civil rights action filed under

18   42 U.S.C. § 1983.  Motions to dismiss by defendants Lin and Micael are fully briefed.  As

19   discussed below, the undersigned recommends that defendant Lin's motion be granted and

20   defendant Micael's motion be partially granted.

21   I.  Procedural Background

22        On August 7, 2020, the undersigned recommended that defendant Dr. Lin's motion to

23   dismiss be granted "without prejudice to plaintiff filing a motion to amend should plaintiff

24   ascertain facts through discovery that support a deliberate indifference claim against Dr. Lin."

25   (ECF No. 42 at 10.)  On April 30, 2021, the district court granted defendant Lin's motion to

26   dismiss without prejudice.[1]  (ECF No. 94.)

27   ─────────────────
   [1]  On April 30, 2021, the district court also adopted the undersigned's findings and
28   recommendations, and defendants Toralba, Martinez, Dr. Galang, and Dr. Hawkins were
     dismissed with prejudice.  The motion to dismiss filed by defendant Micael, an RN assigned to

                                      1

1    Plaintiff filed an amended complaint on October 31, 2021.  (ECF No. 114.)

2    Defendant Ibrahim filed an amended answer on November 15, 2021.  (ECF No. 115.)

3    II.  The Verified Amended Complaint

4    At all times relevant herein, plaintiff was incarcerated at Mule Creek State Prison

5    ("MCSP").  Named as defendants are:  Dr. Mohamed Ibrahim, physician and surgeon at Doctor's

6    Hospital of Manteca, California; Luwam Micael, employed by CDCR at MCSP as a Clinic RN;

7    Dr. Lin, physician and surgeon employed by Neogenesis Plastic Surgery of Elk Gove, who

8    performed surgery at Methodist Hospital of Sacramento; and newly-added defendant Stan

9    Wilkenson, physical therapist, employed as a contract provider to MCSP.[2]  Defendants were

10   allegedly deliberately indifferent to plaintiff's serious medical needs in connection with the care

11   and treatment of fractures to numerous metacarpal bones in his right hand, including alleged

12   delays in post-operative care, and the provision of physical therapy related thereto.  Due to such

13   deliberate indifference, including delays and omissions, plaintiff suffered severe contractures of

14   his second, third, fourth and fifth digits of his right hand, and a severely deformed right hand,

15   rendering his dominant right hand unusable, and subjecting plaintiff to severe and chronic pain.

16   Plaintiff seeks, *inter alia*, money damages.

17   Background

18   Plaintiff was assaulted on May 22, 2014, and suffered a right hand injury for which he

19   received surgery during which K-Wire Pins x3 were implanted.  The pins were allegedly not

20   timely removed; rather, 58 days after surgery, the pins, partially protruding and possibly infected,

21   were finally removed.  Dr. Rudas noted that post operatively, plaintiff had "a very poor result,"

22   and was left with contractures of his right, third, fourth and fifth fingers.  (ECF No. 114 at 6.)

23   Plaintiff did not receive physical therapy as ordered.  On January 30, 2015, Dr. Ibrahim

24   performed revisionist surgery on plaintiff's right hand to free the contractures.  On February 13,

25   2015, Dr. Pettersen requested urgent physical therapy for plaintiff's right hand contractures.  Dr.

26

27   address plaintiff's health care requests dated July 11 and 30, 2018, was denied.

28   [2]  Defendant Wilkenson has not yet been served and is addressed separately.

1    Ibrahim allegedly failed or refused to get plaintiff back to Dr. Ibrahim's clinic for the timely

2    removal of the wrist hand orthopedic brace.  (ECF No. 114 at 32-33.)  By March 23, 2015, Dr.

3    Ibrahim noted plaintiff had no physical therapy thus far.  (Id. at 8.)  On November 14, 2016, Dr.

4    Vaughn requested plaintiff receive physical therapy two times per week for eight weeks for the

5    contractures.  On November 16, 2017, plaintiff met with Dr. Ibrahim; and plaintiff did not agree

6    to allow Dr. Ibrahim to fuse plaintiff's joints.  (Id. at 10.)

7              Specific Allegations as to Dr. Lin & RN Micael

8              On May 28, 2018, plaintiff was assaulted again and sent to San Juan General Hospital

9    emergency department due to another right hand injury.  (ECF No. 114 at 10.)  On June 5, 2018,

10   plaintiff first saw defendant Dr. Lin for a surgical consult for second metacarpal bone surgical

11   repair.  (ECF No. 114 at 11.)  On June 8, 2018, Dr. Lin performed surgery on plaintiff's right

12   hand, during which K-wire X2 pins were implanted.  On June 24, 2018, plaintiff met with Dr. Lin

13   who removed plaintiff's sutures.  Dr. Lin scheduled plaintiff to see Dr. Lin

14              in an additional two weeks, which would be on or about July 7, 2018,
              but Lin told plaintiff that he might get plaintiff in a little sooner,
15              before the 4th of July holiday.  This did not happen. . . . Dr. Lin failed
              to, or refused to, provide plaintiff with a proper and timely post-
16              operative aftercare follow up cons[ult] to remove the K wire pins that
              [Dr. Lin] implanted in plaintiff's right index finger.
17

18   (ECF No. 114 at 31 ¶ 90.)  Plaintiff contends that Dr. Lin had subjective knowledge of plaintiff's

19   serious medical needs prior to and after the June 8, 2018 surgery because following the surgery,

20   Dr. Lin noted plaintiff's prior surgery, plaintiff's joints were stiff, and Dr. Lin had a difficult time

21   reducing the index finger, accidentally fragmenting plaintiff's index finger during the surgery.

22   (ECF No. 114 at 34.)  Also, on June 5, 2018, during Dr. Lin's preoperative surgical consult and

23   exam, Dr. Lin noted plaintiff's prior injury to the third, fourth, and fifth metacarpals that required

24   surgery, and plaintiff's 0-30 degrees flexion at the right third, fourth, and fifth dorsal MCP joint.

25   In other words, "the middle, ring and little finger are 'flexed inward slightly,' called

26   'contractures.'"  (ECF No. 114 at 32.)  When asked, plaintiff explained that the contractures were

27   the result of the failure or refusal of Dr. Galang to timely remove the K wire pins, requiring

28   another surgery by Dr. Ibrahim to free the contractures, and then Dr. Ibrahim subsequently failed

to timely remove the wrist hand orthopedic brace.  (ECF No. 114 at 32-33.)  Plaintiff allegedly

informed Dr. Lin that because both prior doctors probably caused damage to plaintiff's hand, "the

CDCR is giving [Dr. Lin] a shot at it, in hopes you can fix my finger and get back to see you on

time."  (ECF No. 114 at 33.)  Plaintiff claims Dr. Lin "then gave plaintiff a solemn vow" that

such callback failure would not happen and has never happened at Dr. Lin's clinic.  Plaintiff

inquired about Dr. Lin's callback system, and Dr. Lin responded that his "office makes contact

with any facility in the area who bring inmates to me from jails and prisons, and we check to

ensure that the transport dates align with [Dr. Lin's] records and availability for consult dates."

(ECF No. 114 at 33.)

  Plaintiff argues that Dr. Lin did not use the callback system or take any effort to ensure

plaintiff received timely postoperative care.  Plaintiff contends that Dr. Lin "failed his duty to set

plaintiff the offsite medical appointment."  (ECF No. 114 at 35:4-6.)  Plaintiff claims the system

is set up so that the specialist informs the CDCR medical staff of the prisoner's appointment, and

the MCSP transport officers get the prisoner to the appointment.  (Id.)  Plaintiff claims Dr. Lin

damaged plaintiff's right index finger during the surgery, and then further damaged it by refusing

to provide aftercare.

  On July 7, 2018, plaintiff filed a request for health care services, noting he needed the pins

removed immediately, and also needed a dressing change.  (ECF No. 114 at 11.)  On July 11,

2018, plaintiff refused to see defendant RN Micael "due to unresolved appeals and grievances

against her, and requested to see another RN."  (ECF No. 114 at 11.)  On July 29, 2018, plaintiff

filed another request for health care services, noting

> I personally pulled out TWO surgical pins in order to save my right
> index finger.  YES!  Mule Creek State Prison failed to take me to
> scheduled ORTHO appointment so I could have two Surgical Pins
> removed, I am experiencing pain, PLEASE! No! RN Micael.  PREA
> concerns.

(ECF No. 114 at 12.)  On August 21, 2018, plaintiff met with Dr. Lin, who noted:

> Patient words: " I didn't get my follow-up appointment 2 weeks after
> last visit of (6/19/18)."  He took pins off 3 weeks later.  Follow-up in
> 6 weeks or as needed.

(ECF No. 114 at 12.)  On October 23, 2018, plaintiff met with Dr. Lin, who noted lack of range

4

1    of motion in plaintiff's second, third, fourth and fifth fingers, and discussed with plaintiff "dorsal

2    capsulotomies of each affected finger.  Follow-up as needed."  (ECF No. 114 at 13.)

3        Plaintiff avers that Dr. Lin did not ensure plaintiff made it to the clinic for the timely

4    removal of the K-wire pins X2.  (ECF No. 114 at 22 ¶ 67.)  Plaintiff alleges that Dr. Lin was

5    deliberately indifferent to plaintiff's serious medical needs to be treated for ongoing chronic and

6    severe pain by failing or refusing to provide timely post-operative aftercare following Dr. Lin's

7    surgical procedure on June 8, 2018, where 2 K-wire pins were implanted.  (ECF No. 114 at 30-37

8    (third cause of action).)

9        In the second cause of action, plaintiff alleges that defendant Micael was deliberately

10    indifferent to plaintiff's serious medical needs by subjecting plaintiff to ongoing chronic and

11    severe pain and failing to provide proper and timely medical care, and also violated plaintiff's

12    First Amendment right to be free from retaliation for filing grievances against nurses who denied

13    treatment.  Plaintiff contends defendant Micael retaliated against plaintiff for filing a PREA claim

14    against Micael by canceling plaintiff's important surgical post-operative aftercare consult with

15    Dr. Lin.  (ECF No. 114 at 22 ¶ 65.)  On plaintiff's CDCR form 7362 sent on July 7, 2018,

16    plaintiff claims defendant Micael noted that she reviewed the July 7, 2018 form on July 10, 2018.

17    Micael failed to contact Dr. Lin for an inquiry as to why plaintiff did not have a timely follow-up

18    for the hardware removal.  Instead, Micael set an appointment for plaintiff to see Micael the next

19    day, July 11, 2018.  On July 11, 2018, plaintiff refused to see Micael because plaintiff had not yet

20    rescinded his PREA claim against her.  Plaintiff contends that Micael had a duty to contact her

21    nursing supervisor but failed to do so.  (ECF No. 114 at 23.)

22        Plaintiff then clarifies that he "does not claim" defendant Micael "cancelled the post-

23    operative follow-up exam that was to take place prior to the July 4, 2018 holiday."  (ECF No. 114

24    at 23 ¶ 69.)  Rather, "plaintiff is informed and believes, and thereon alleges," that defendant

25    Micael "refused to contact Dr. Lin in a timely manner to verify why plaintiff did not have an

26    appointment for pins X2 removal prior to July 4, 2018, and verify when plaintiff's next post-

27    operative aftercare exam and K wires pins removal date would be."  (ECF No. 114 at 23 ¶ 69.)

28    Plaintiff is informed and believes, and thereon alleges, that defendant Micael retaliated against

1   plaintiff by using her authority to refuse to schedule plaintiff to see Dr. Lin for the overdue pins

2   X2 removal, and to inquire into the already missed appointment, violating the standard of care.

3   (ECF No. 114 at 24.)  Micael retaliated against plaintiff by refusing to reschedule plaintiff's

4   overdue post-operative follow-up for pin removal, and by failing to contact her supervisor to

5   assign another RN to see plaintiff in light of his unresolved complaints and PREA claim.  Plaintiff

6   contends that he was required to submit his requests to Micael as she was his preassigned RN.

7   (ECF No. 114 at 27.)  Plaintiff further avers that Micael retaliated against plaintiff by refusing to

8   allow plaintiff to see a different RN for plaintiff's serious medical needs, and then "used the

9   refusals to see [Micael] as refusals to see Dr. Lin because defendant Micael has the authority and

10   ability to make it appear that way."  (ECF No. 114 at 28.)

11        Plaintiff avers that he previously explained to defendant Micael that plaintiff had suffered

12   further injury following the failures of Dr. Galang and Dr. Ibrahim to timely remove pins from

13   plaintiff's right hand following the two prior surgeries.  (ECF No. 114 at 25.)

14        Plaintiff claims that when defendant Micael refused to contact Dr. Lin for a new off-site

15   appointment, after plaintiff refused to see her, plaintiff was forced to pull the pins out of his hand

16   himself.  (ECF No. 114 at 28.)  He contends that defendant Micael "chose to ignore plaintiff's

17   serious medical needs for immediate post-op aftercare, and as a direct result, plaintiff suffered

18   another damaged finger."  (ECF No. 114 at 29-30.)

19   III.  Legal Standards Governing Motion to Dismiss

20        Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

21   "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

22   considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

23   must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

24   (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

25   McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

26   1999).  Still, to survive dismissal for failure to state a claim, a complaint must contain more than

27   "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

28   of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

1    "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

2    statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

3    upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

4    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

5    draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556

6    U.S. at 678.  "Dismissal is proper when the complaint does not make out a cognizable legal

7    theory or does not allege sufficient facts to support a cognizable legal theory." Chubb Custom

8    Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 956 (9th Cir. 2013) (citation omitted).

9       For purposes of dismissal under Rule 12(b)(6), the court generally considers only

10   allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

11   subject to judicial notice, and construes all well-pleaded material factual allegations in the light

12   most favorable to the nonmoving party.  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).

13       A motion to dismiss for failure to state a claim should not be granted unless it appears

14   beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

15   entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).

16   IV.   The Civil Rights Act

17       The Civil Rights Act under which this action was filed provides as follows:

18
19          Every person who, under color of [state law] . . . subjects, or causes
         to be subjected, any citizen of the United States . . . to the deprivation
         of any rights, privileges, or immunities secured by the Constitution .
20          . . shall be liable to the party injured in an action at law, suit in equity,
         or other proper proceeding for redress.

21   42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege:  (1) the violation of a

22   federal constitutional or statutory right; and (2) that the violation was committed by a person

23   acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v.

24   Williams, 297 F.3d 930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil

25   rights claim unless the facts establish the defendant's personal involvement in the constitutional

26   deprivation or a causal connection between the defendant's wrongful conduct and the alleged

27   constitutional deprivation.  See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v.

28   Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  That is, plaintiff may not sue any official on the

1    theory that the official is liable for the unconstitutional conduct of his or her subordinates.  Iqbal,

2    556 U.S. at 679.  While there is no vicarious liability under § 1983, a supervisor may be held

3    liable for his own deliberate indifference if he knows and acquiesces in the unconstitutional

4    conduct of his subordinates.  See Starr v. Baca, 652 F.3d 1202, 1206-07 (9th Cir. 2011).  A

5    plaintiff must also show that the supervisor had the requisite state of mind to establish liability,

6    which turns on the requirement of the particular claim -- and, more specifically, on the state of

7    mind required by the particular claim -- not on a generally applicable concept of supervisory

8    liability.  Oregon State University Student Alliance v. Ray, 699 F.3d 1053, 1071 (9th Cir. 2012).

9    V.  Relevant Standards

10         1.  Eighth Amendment

11         Generally, deliberate indifference to a serious medical need presents a cognizable claim

12    for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

13    Estelle v. Gamble, 429 U.S. 97, 104 (1976.)  According to Farmer v. Brennan, 511 U.S. 825, 947

14    (1994), "deliberate indifference" to a serious medical need exists "if [the prison official] knows

15    that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that risk by failing to

16    take reasonable measures to abate it."  Id.  The deliberate indifference standard "is less stringent

17    in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated

18    individuals because 'the State's responsibility to provide inmates with medical care does not

19    conflict with competing administrative concerns." McGuckin v. Smith, 974 F.2d 1050, 1060 (9th

20    Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled on other grounds by

21    WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

22         In order to state an Eighth Amendment claim based on medical care in prison, plaintiff

23    must first "show a serious medical need by demonstrating that failure to treat a prisoner's

24    condition could result in further significant injury or the unnecessary and wanton infliction of

25    pain.  Second, the plaintiff must show the defendant's response to the need was deliberately

26    indifferent."  Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting Jett v. Penner,

27    439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

28         The existence of a condition or injury that a reasonable doctor would find important and

worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic or substantial pain are indications of a serious medical need.  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (citing McGuckin, 974 F.2d at 1059-60) (quotation marks omitted).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  "Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  Id. at 1057 (quoting Farmer, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002) (delays without significant harm do not constitute an Eighth Amendment violation); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (mere delay of surgery is insufficient absent evidence the denial was harmful).  Thus, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett, 439 F.3d at 1096.  The needless suffering of pain may be sufficient to demonstrate further harm.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

A difference of opinion between himself and medical staff is insufficient to state a cognizable Eighth Amendment violation.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976).  Further, "the indifference to [plaintiff's] medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  "[E]ven

9

1  gross negligence is insufficient to establish a constitutional violation." Toguchi, 391 F.3d at 1060

2  (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

3      2.  First Amendment

4      To state a claim for First Amendment retaliation, a prisoner must allege:  (1) that he was

5  engaged in protected conduct; (2) that the defendant took adverse action against the plaintiff; (3) a

6  causal connection between the adverse action and the protected conduct; (4) that "the "official's

7  acts would chill or silence a person of ordinary firmness from future First Amendment

8  activities[;]" and (5) that the retaliatory acts did not advance the legitimate goals of the

9  correctional institution.  Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

10 VI.  Defendant Lin's Motion

11     A.  The Parties' Positions

12         1.  Dr. Lin's Motion

13     Defendant Lin argues that plaintiff's additional allegations are insufficient to state a cause

14 of action against Dr. Lin.  Defendant points out that plaintiff's new allegations concerning Dr.

15 Lin's representations about his office's call-back procedures are not supported by any of the

16 attachments to plaintiff's pleading and will not be supported by any evidence.  In any event, such

17 new allegations do not transform the allegations against Dr. Lin to anything beyond simple

18 negligence and do not negate the alleged interference by defendant Micael, which is alleged to

19 have been the actual cause of plaintiff's delayed post-surgical appointment with Dr. Lin.

20     Defendant argues that plaintiff's sole allegation that Dr. Lin did not ensure plaintiff

21 received a timely postsurgical visit does not demonstrate deliberate indifference.  The pleading

22 alleges Dr. Lin was a privately employed physician who provided care to plaintiff pursuant to a

23 contract with CDCR, and no allegations suggest Dr. Lin had any ability to control plaintiff's

24 access to outside physicians or to compel his attendance at scheduled appointments.  While

25 plaintiff's added allegations are intended to demonstrate Dr. Lin knew plaintiff had previous

26 difficulties in attending follow-up procedures, and plaintiff expected Dr. Lin to ensure plaintiff's

27 follow-up procedure was scheduled, such allegations fail to show Dr. Lin had any control over the

28 CDCR and whether plaintiff was returned for the follow-up procedure, and do not establish Dr.

1   Lin was deliberately indifferent.  Defendant contends plaintiff's allegations simply show an

2   alleged failure of Dr. Lin's office to follow-up, which at most supports a claim of negligence if

3   plaintiff could demonstrate Dr. Lin did not use an adequate callback system and such system was

4   required by the standard of care.

5          Defendant argues that a prison failing to allow an inmate to access care is different from a

6   private physician failing to inquire as to the whereabouts of a CDCR patient for a follow-up visit.

7   The prison controls a prisoner's access to medical care and the prisoner is essentially at its mercy,

8   which is not the case with a private physician when the patient is outside CDCR custody.

9          Also, plaintiff fails to meet the knowledge element because plaintiff was at the prison at

10  the time he needed to return to see Dr. Lin.  Thus, Dr. Lin could not have been subjectively aware

11  of plaintiff's immediate medical need.  Had Dr. Lin been advised of plaintiff's actual condition

12  and needed to return to see him (because no follow-up had been allowed), then Dr. Lin would

13  have had a duty to provide additional care, if allowed to do so.  While Dr. Lin knew as of the time

14  he last saw plaintiff that he would need further care, plaintiff alleges no facts showing Dr. Lin

15  was actually aware that plaintiff was not receiving or being scheduled to receive the needed care.

16  Only the prison and prison officials would have been aware of the actual immediate need and

17  were the only ones in the position to provide for such care.  Defendant argues that even assuming

18  Dr. Lin or his staff should have inquired as to plaintiff's whereabouts if an appointment was

19  missed, plaintiff alleges no facts that would show such failure was anything more than

20  inadvertence.  Both inadvertence and negligence are insufficient to demonstrate deliberate

21  indifference.  (ECF No. 116 at 11.)

22         Regardless of plaintiff's additional allegations, defendant contends it was still the

23  affirmative, intentional conduct by someone other than Dr. Lin who was the cause of the delay.

24             Plaintiff notes that he had asked for the visit with Dr. Lin and Nurse
              Micael denied this request.  Further, plaintiff alleges that Nurse
25             Micael used the alleged refusal to see her as a refusal to return to Dr.
              Lin, and that she was cancelling his important post-surgical visits.
26

27  (ECF No. 116 at 11.)  Because plaintiff alleges that the assigned nurses are the "gateway" for an

28  inmate to receive care from an off-site medical provider, which is the only way for an inmate to

11

1    receive such care (ECF No. 114 at 26-27), the only reasonable inference is that defendant Micael

2    was the gatekeeper who foreclosed plaintiff's ability to timely follow-up with Dr. Lin, whether or

3    not Dr. Lin had initially scheduled the follow-up appointment or not.  (ECF No. 116 at 12.)

4         Finally, "a party cannot amend pleadings to "directly contradic[t] an earlier assertion

5    made in the same proceeding."  (ECF No. 116 at 12, citing <u>Russell v. Rolfs</u>, 893 F.2d 1033, 1037

6    (9th Cir. 1990).  Defendant points out that the original complaint alleged plaintiff did have an

7    appointment scheduled with Dr. Lin, and it was the intentional misconduct of defendant Micael

8    that led to the appointment being cancelled, not that Dr. Lin failed to schedule the appointment.

9    Now, without any explanation or justification, plaintiff attempts to avoid such prior allegations by

10   alleging contradictory facts -- that no appointment was ever scheduled and defendant Micael did

11   not schedule an appointment as instructed by plaintiff.  (ECF No. 116 at 12.)  Plaintiff cannot

12   now allege that Dr. Lin was responsible for not scheduling the post-surgical visit when plaintiff

13   earlier alleged that the appointment was cancelled by defendant Micael.

14                    2. <u>Plaintiff's Opposition</u>

15        In response to defendant's argument that the factual allegations against Dr. Lin fail to

16   demonstrate deliberate indifference and the allegations against the co-defendants show that the

17   intentional conduct of others was a superseding cause cutting off Dr. Lin's liability, plaintiff

18   contends that the court screened the complaint and found plaintiff stated "potentially cognizable

19   claims" against Dr. Lin and others.  (ECF No. 119 at 4, citing ECF No. 6.)

20        Plaintiff states that Dr. Lin "scheduled the plaintiff to see [Dr.] Lin in two weeks, which

21   would have been on or about July 7, 2018," but told plaintiff he might get plaintiff in a little

22   sooner, before the 4th of July holiday, which did not happen.  (ECF No. 119 at 4-5.)  Dr. Lin

23   failed or refused to provide plaintiff with timely post-operative medical care.[3]  Plaintiff contends

24   that Dr. Lin's subjective and actual knowledge is demonstrated by his notation concerning

25   plaintiff's prior right hand injury with limited flexion and contractures.  Plaintiff reiterates his

26   new allegations that he and Dr. Lin discussed the prior surgeons' failures or refusals to provide

27   
     ────────────
28   [3]  Plaintiff claims that it is "important" that this occurred in the summer of July 2018, but does not
     explain why that is important.  (ECF No. 119 at 5.)

timely aftercare, and that Dr. Lin vowed that such callback failure would not happen and never has happened at Dr. Lin's clinic.  Dr. Lin, "with deliberate indifference, failed that vow."  (ECF No. 119 at 6.)  Plaintiff contends that Dr. Lin's accidental fragmenting of plaintiff's index finger during the operation also required Dr. Lin's vigilant follow-up, which did not occur.

Plaintiff concedes that following the June 24, 2018 appointment where his sutures were removed, Dr. Lin noted plaintiff was to return in two weeks for removal of the K-wire pins x2.  On July 7, 2018, plaintiff filed a health care services request form, noting he needed the pins removed immediately and needed a dressing change.  But he claims that due to Dr. Lin's deliberate indifference, plaintiff was forced to remove the pins himself.

Plaintiff contends that Dr. Lin's concession that at the time he last saw plaintiff, Dr. Lin knew plaintiff would need further care demonstrates that as plaintiff's surgeon, Dr. Lin was aware plaintiff needed care, and to ignore plaintiff's need for such care "is more than inadvertence or negligence."  (ECF No. 119 at 7.)  Dr. Lin was also aware that significant injury would occur if Dr. Lin did not provide timely aftercare.  Plaintiff maintains that Dr. Lin damaged plaintiff's finger during the surgery, then further damaged it by refusing to provide aftercare for it.  (ECF No. 119 at 8.)

### 3. Dr. Lin's Reply

Defendant argues that even if Dr. Lin knew plaintiff required post-surgical care to remove the pins, Dr. Lin was not the only doctor who could provide such treatment.  Because plaintiff was in the custody of CDCR, and he could be moved or confined at any point without the consent of plaintiff or Dr . Lin, the lack of return by plaintiff would not demonstrate Dr. Lin's knowledge that plaintiff was not receiving needed treatment.  Thus, plaintiff fails to demonstrate Dr. Lin knew plaintiff's serious medical need was not being addressed.  (ECF No. 120 at 2.)

Further, because plaintiff was under CDCR custody and control, Dr. Lin had no power to compel plaintiff's presence at Dr. Lin's office.  Rather, plaintiff's allegations demonstrate it was up to the prison to return plaintiff for treatment, and it is alleged that prison employees thwarted plaintiff's return, not Dr. Lin.  Therefore, no facts demonstrate a deliberate action or omission by Dr. Lin that could have been a cause of injury to plaintiff.

1        B. Discussion

2            1. Prior Screening Order

3        Initially, the undersigned notes that plaintiff's reliance on the court's October 1, 2019

4 screening order to defeat the motion to dismiss is unavailing for two reasons. First, the order

5 screened plaintiff's original complaint, not plaintiff's amended complaint which is the operative

6 pleading. Defendants moved to dismiss before the court screened plaintiff's amended complaint.

7 Second, plaintiff misconstrues the nature of the preliminary screening called for by 28 U.S.C.

8 § 1915A. On screening, a court's determination that a complaint may state cognizable claims

9 does not preclude a defendant from subsequently bringing a motion to dismiss one or more of

10 those claims under Federal Rule of Civil Procedure 12(b)(6). See Norsworthy v. Beard, 87

11 F.Supp.3d 1104, 1111 n.4 (N.D. Cal. Mar. 31, 2015) ("The issuance of a screening order under

12 the Prison Litigation Reform Act finding that [plaintiff] has stated a cognizable claim does not

13 foreclose Defendants from moving to dismiss the complaint."); Teahan v. Wilhelm, 481

14 F.Supp.2d 1115, 1119 (S.D. Cal. 2007) ("[T]he sua sponte screening and dismissal procedure is

15 cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may

16 choose to bring."); James v. Perez, 2012 WL 5387676 (E.D. Cal. Nov. 1, 2012) ("To adopt

17 [plaintiff]'s position [and hold that screening under 28 U.S.C. § 1915A precludes defendants from

18 subsequently filing a Rule 12(b)(6) motion] would deprive [d]efendants of the basic procedural

19 right to challenge the sufficiency of the pleadings."). It is for this reason that the undersigned

20 found in the screening order that the original complaint stated *potentially* cognizable Eighth

21 Amendment claims for relief against defendants Micael, Dr. Lin, and others pursuant to 42 U.S.C.

22 § 1983 and 28 U.S.C. § 1915A(b). (ECF No. 6 at 4.) Plaintiff cannot rely solely on the court's

23 screening as a basis for overcoming a Rule 12(b)(6) motion.

24            2. Pleading Inconsistencies

25        Next, plaintiff is correct that on a motion to dismiss, the court must accept as true

26 plaintiff's factual allegations. Here, however, plaintiff's factual allegations are unclear and

27 contradictory. Indeed, as pointed out by defendant Dr. Lin, plaintiff clearly alleged in the verified

28 original complaint that defendant Micael cancelled plaintiff's aftercare appointment with Dr. Lin.

1   (ECF No. 1 at 26:6-8, 27:4-6.)  Plaintiff also included this allegation in his amended complaint:

2   defendant Micael retaliated against plaintiff for filing a PREA claim against Micael by "canceling

3   plaintiff's important surgical post-operative aftercare consult with Dr. Lin."  (ECF No. 114 at 21-

4   22 ¶ 65.)  It is unclear whether such re-pled allegation was inadvertently retained in light of

5   plaintiff's next allegation:  "Plaintiff does not claim that defendant Ms. Micael, RN, cancelled the

6   post-operative follow up exam that was to take place prior to the July 4, 2018, holiday."  (ECF

7   No. 114 at ¶ 69.)  Rather, based on information and belief, he now alleges Micael refused to

8   timely contact Dr. Lin to verify why plaintiff did not have an appointment for the pin removal

9   prior to July 4, 2018, and verify when the next aftercare appointment would be.  (Id.)  Plaintiff

10   also avers that defendant Micael "refus[ed] to contact Dr. Lin for a new off-site medical treatment

11   appointment, after plaintiff refused to see her."  (ECF No. 114 at 28 ¶ 83.)

12   As to Dr. Lin, plaintiff contends that Dr. Lin "failed his duty to set plaintiff the offsite

13   medical appointment."  (ECF No. 114 at 35:4-6.)  Yet plaintiff also states:  "Doctor Lin then

14   scheduled the plaintiff to see him, Lin, in an additional two weeks, which would be on or about

15   July 7, 2018, but Lin told plaintiff that he might get plaintiff in a little sooner, before the 4th of

16   July holiday."  (ECF No. 114 at 31 ¶ 90.)

17   Plaintiff cannot amend his pleading to "directly contradict[t] an earlier assertion made in

18   the same proceeding."  Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990).  As argued by

19   defendant Dr. Lin, plaintiff "cannot now claim that Dr. Lin was responsible for not scheduling a

20   visit when he earlier alleged that the appointment was cancelled by a vengeful nurse."  (ECF No.

21   116 at 12.)

22   Moreover, plaintiff's allegation that Dr. Lin "made it clear" the pins needed to be removed

23   on or before July 4, 2018 (ECF No. 114 at ¶ 67) conflicts with plaintiff's own allegation that Dr.

24   Lin said he "might" get plaintiff in before the holiday, and with Dr. Lin's June 24, 2018 medical

25   record which states "return in 2 weeks for K-wires removal."  (ECF No. 114-9.)  Two weeks from

26   June 24, 2018 is Sunday, July 8, 2018, not July 4, 2018.

27   Plaintiff also avers that Dr. Lin did not ensure plaintiff made it to the clinic for the timely

28   removal of the K-wire pins X2.  But plaintiff also alleges that, as written in his own request for

1    health care services:  "Mule Creek State Prison failed to take me to scheduled ORTHO

2    appointment so I could have two Surgical Pins removed."  (ECF Nos. 114 at 12, ¶ 37; 35:4-6;

3    114-12 at 2.)

4         Despite plaintiff's detailed declaration that includes myriad specific dates, plaintiff

5    provides no specific date for the appointment he was to have for Dr. Lin's aftercare, if plaintiff

6    had one, even if it was later cancelled.  (ECF No. 114-1, *passim*.)  Plaintiff's allegations are

7    simply unclear as to whether or not an aftercare appointment was initially scheduled.  But

8    defendants appear to agree, and plaintiff does not refute in post-motion briefing, that plaintiff had

9    an earlier appointment to which he was not transported, and no subsequent appointment was set.

10                  3. Deliberate Indifference

11        As to plaintiff's deliberate indifference claims against Dr. Lin, the undersigned finds that

12   plaintiff's right hand injuries constitute a serious medical need.  The issue is whether plaintiff

13   alleged sufficient facts to demonstrate Dr. Lin was deliberately indifferent.

14        Despite the above inconsistencies, plaintiff alleges no facts demonstrating Dr. Lin acted,

15   or failed to act, with a culpable state of mind.  Even taking into account plaintiff's new allegations

16   that plaintiff discussed the importance of his return appointment with Dr. Lin who vowed to

17   ensure plaintiff's timely return, there are no facts demonstrating a deliberate, intentional, or

18   purposeful act or omission on the part of Dr. Lin.  While Dr. Lin was aware when he removed

19   plaintiff's sutures that plaintiff would require another appointment for the removal of the surgical

20   pins, plaintiff alleges no facts demonstrating Dr. Lin was made aware that plaintiff's pins still

21   needed to be removed or had not been removed.  As pointed out by defendant, plaintiff could

22   have been transferred to a different prison, or seen by a different doctor for removal of the pins.

23        Moreover, even assuming Dr. Lin or his staff should have inquired as to plaintiff's

24   whereabouts on the day of the missed appointment, if there was such an appointment, or after two

25   weeks elapsed and plaintiff did not have an appointment, absent facts not alleged here such

26   failure to inquire would be inadvertent or negligent and insufficient to demonstrate Dr. Lin's

27   deliberate indifference.  McGuckin, 974 F.2d at 1059 (an "inadvertent [or negligent] failure to

28   provide adequate medical care" alone does not state a claim under § 1983) (citing Estelle, 429

16

U.S. at 105); see Gonzalez v. Malhotra, 2019 WL 6497877 (S.D. Cal. Dec. 3, 2019) (prisoner's claim that the doctor allegedly failed to re-schedule a return follow-up appointment with neuro ophthalmologist failed to state an Eighth Amendment claim).  Plaintiff cites no legal authorities to the contrary.  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.  Even "gross negligence" is insufficient to establish deliberate indifference.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

VII.  Defendant Micael's Motion

A.  The Parties' Positions

1.  RN Micael's Motion

First, defendant argues that plaintiff's official capacity and declaratory relief claims must be dismissed as those claims are barred under the Eleventh Amendment.  Plaintiff does not seek non-monetary, prospective relief.  Moreover, plaintiff's request for declaratory relief is not a cause of action to redress past wrongs, which are addressed by claims for damages.  Because plaintiff's request for declaratory relief duplicates his claim for damages, it is improper and should be dismissed.

Second, defendant contends plaintiff fails to identify any acts or omissions that were deliberately indifferent to a serious medical need.  Defendant argues that plaintiff admits his return appointment with Dr. Lin was scheduled "for before the July 4 holiday," and defendant Micael did not cancel it.  (ECF No. 118-1 at 6, citing ECF No. 114 at ¶¶ 37, 67, 69.)  On Saturday, July 7, 2018, plaintiff submitted a request for health care stating he needed the pins removed immediately and requested a dressing change.  Following review of the form on July 10, 2018, defendant Micael set an appointment for plaintiff with her on July 11, 2018.  But after being informed of the risks of refusing the appointment related to his pin removal and dressing changes, plaintiff refused this appointment.  (ECF No. 114-12 at 1.)  The refusal form specifically advised plaintiff the appointment would not be rescheduled, and if he needed medical services he would need to submit a request for services.  (Id.)

Rather than accept medical services from defendant Micael, plaintiff pulled the pins out

himself on or about July 18, 2018, and then submitted another health care request form on July 29, 2018, stating he was in pain.  Plaintiff was scheduled to see Micael on July 30, 2018, but he again refused the appointment.  (ECF No. 114-12 at 3.)  Such refusals were due to plaintiff's "PREA" concerns, but defendant argues that plaintiff admits he withdrew his PREA complaint against Micael.  (ECF No. 118-1 at 6.)  Such refusals were plaintiff's actions, not those of Micael, who was prepared to see plaintiff.  Defendant contends it is clear that plaintiff cannot state a deliberate indifference claim against the medical professional from whom plaintiff refused care.  In addition, defendant argues that plaintiff's refusals demonstrate plaintiff did not consider the pin removal or his alleged pain to be a serious medical need warranting immediate attention.  (ECF No. 118-1 at 6-7.)  Defendant Micael could not then schedule a follow-up appointment for plaintiff to see Dr. Lin because she could not know what plaintiff needed or how to treat him without seeing him, and plaintiff alleges no facts demonstrating it was her responsibility to schedule the pin removal.  (ECF No. 118-11 at 7.)  Indeed, pin removal was apparently scheduled for early July but "MCSP" did not take plaintiff to that visit and Micael did not cancel that appointment.  (Id., citing ECF No. 114 at ¶¶ 37, 67, 69.)

Further, defendant argues that plaintiff did not allege sufficient facts to meet all five elements of a retaliation claim, identifying only his protected activity of submitting medical grievances and the PREA complaint against Micael.  Plaintiff fails to plausibly allege any adverse action by Micael because of such protected activity or any chilling effect from Micael's actions.  Rather, plaintiff alleges that defendant Micael was willing to see plaintiff for his pin removal complaint, but plaintiff refused to see her.  Despite such refusal, plaintiff appears to contend that Micael still should have responded to plaintiff's request and now construes her honoring his constitutional right to refuse treatment as retaliation.  (ECF No. 118-1 at 8.)  Just as plaintiff cannot base a deliberate indifference claim on his refusal of offered treatment, plaintiff cannot allege that his refusal of the same offered treatment states a claim for retaliation.  (Id.)

Finally, defendant Micael argues she is entitled to qualified immunity because it is not established beyond debate that plaintiff's refusal of treatment by defendant Micael could subject her to a claim for violation of plaintiff's Eighth Amendment rights.  (ECF No. 118-1 at 9.)

1              2.  Plaintiff's Opposition

2          Plaintiff argues that his refusal to see defendant Micael does not change plaintiff's need

3   for medical attention or defendant Micael's duty to provide it or to arrange the follow-up visit

4   with Dr. Lin.  (ECF No. 121 at 2.)  Plaintiff contends that defendant concedes that "the only

5   action plaintiff alleges that Nurse Micael did not take that allegedly violated his right was her not

6   scheduling a follow-up appointment."  (ECF No. 121 at 2, citing ECF No. 114 at ¶¶ 61-87.)

7   Plaintiff contends that paragraphs 62 - 85 of the amended complaint provides the facts against

8   defendant Micael.  Plaintiff argues that on a motion to dismiss, plaintiff need only provide a

9   "short and plain statement of the claim showing [he] is entitled to relief."  (ECF No. 121 at 6,

10  citing Fed. R. Civ. P. 8(a).)  Under Iqbal, in order to defeat defendant's motion to dismiss, the

11  first amended complaint is only required to "contain sufficient factual matter, accepted as true, to

12  'state a claim to relief that is plausible on its face.'"  Id., 556 U.S. at 1949.

13             3.  Defendant's Reply

14         While plaintiff "broadly claims" the amended complaint sets out in "voluminous detail"

15  allegations against defendant Micael that demonstrate her deliberate indifference, plaintiff failed

16  to argue specific facts, conceding defendant's key point:  plaintiff refused the appointment with

17  defendant Micael regarding his complaint for removal of surgical pins.  (ECF No. 122 at 2.)

18  Despite such concession, plaintiff continues to maintain Micael had some duty to schedule an

19  appointment for pin removal, without citing any legal authority.  Defendant counters that

20  "speculation of an amorphous duty of defendant is insufficient to support a civil rights claim."

21  (ECF No. 122 at 2, citing Iqbal, 556 U.S. at 678.)  Defendant points out that plaintiff failed to

22  address the impact of plaintiff's refusal to see defendant Micael, or legal authorities cited by

23  defense counsel, and fails to cite any authority that prison medical staff have a duty to insist on

24  providing care to an inmate who states he does not want it.

25         Also, defendant contends plaintiff's failure to address defendant's arguments concerning

26  failure to state a claim for retaliation and dismissal of the official capacity claims or qualified

27  immunity concedes those issues.  (ECF No. 122 at 2.)  Thus, the retaliation claim and official

28  capacity claims should be dismissed, and defendant Micael should be granted qualified immunity.

1    Finally, defendant argues that plaintiff should not be granted leave to amend because

2    amendment would be futile in light of plaintiff's concession that he refused treatment for his pin

3    removal complaint offered by defendant Micael.

4    B. Discussion

5    1. Official Capacity Claims/Request for Declaratory Relief

6    Defendant's arguments that plaintiff's official capacity claims and request for declaratory

7    relief should be dismissed are well-taken.

8    "The Eleventh Amendment bars suits for money damages in federal court against a state,

9    its agencies, and state officials acting in their official capacities." Aholelei v. Dept. of Public

10   Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). The Eleventh Amendment does not bar claims for

11   prospective injunctive relief against an officer of the state who acts in his official capacity

12   because such actions are not treated as actions against the state. Flint v. Dennison, 488 F.3d 816,

13   825 (9th Cir. 2007), citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989).

14   Here, although plaintiff sues defendants in their personal and official capacities, plaintiff

15   seeks money damages as well as declaratory relief, but he does not seek prospective injunctive

16   relief.

17   "A claim for declaratory relief is unnecessary where an adequate remedy exists under

18   some other cause of action." Mangindin v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D.

19   Cal. 2009). "Declaratory relief should be denied when it will neither serve a useful purpose in

20   clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief

21   from the uncertainty and controversy faced by the parties." United States v. Washington, 759

22   F.2d 1353, 1357 (9th Cir. 1985). "Further, [t]he purpose of a judicial declaration of rights . . . is

23   to enable parties to shape their conduct so as to avoid a breach . . . . [I]n short, the remedy is to be

24   used in the interests of preventative justice, to declare rights rather than execute them." Achal v.

25   Gate Gourmet, Inc., 114 F. Supp. 3d 781, 819 (N.D. Cal. 2015) (quotations omitted) (alterations

26   in original).

27   Here, plaintiff seeks a declaratory judgment declaring that defendants' actions set forth in

28   his pleading violated plaintiff's constitutional rights. (ECF No. 114 at 46.) The requested

20

1    declaratory relief would not clarify and settle the legal relations in issue, terminate the

2    proceedings, or afford relief from uncertainty or controversy faced by the parties.  See

3    Washington, 759 F.2d at 1357.  Rather, a verdict in plaintiff's favor would be a finding that his

4    constitutional rights were violated.  Accordingly, plaintiff's request for declaratory relief is

5    unnecessary and should be dismissed.  Plaintiff's claims against defendants based on their official

6    capacities should be dismissed because plaintiff cannot sue them for monetary damages in their

7    official capacities.  This action shall proceed against defendants in their personal capacities.

8                    2.  First and Eighth Amendment Claims

9            Plaintiff alleges facts demonstrating that defendant Micael, knowing plaintiff had suffered

10   prior delays in post-surgical pin removal and wrist brace removal, failed to seek an alternate

11   medical professional to see plaintiff in light of his pending appeals and complaints, including  a

12   PREA complaint against Micael, failed to notify her supervisor of plaintiff's refusal to see

13   Micael, and failed to make arrangements for plaintiff to be returned to Dr. Lin for pin removal, all

14   despite her awareness that plaintiff was overdue for the pin removal according to Dr. Lin's order

15   to "return in 2 weeks for K-wires removal."  (ECF No. 114-9.)  Instead, she apparently simply

16   signed off on plaintiff's refusal to see Micael.  Plaintiff did not refuse to see Dr. Lin.

17           The undersigned agrees with defendant Micael that typically an inmate cannot refuse to be

18   seen and then claim the medical professional was deliberately indifferent to the inmate's serious

19   medical needs.  Here, however, at the time plaintiff refused to see defendant Micael he informed

20   her it was due to his "ongoing appeals and complaints."  (ECF No. 114-12.)  In light of his need

21   to have the surgical pins removed by Dr. Lin, as ordered by Dr. Lin, plaintiff refused treatment by

22   defendant Micael.  It can be inferred that he sought to see a different medical professional.  Given

23   Micael's subjective knowledge of plaintiff's history of failed timely aftercare appointments, and

24   plaintiff's allegations that the assigned RN is the gateway through which all medical care is

25   provided, a reasonable juror could find that defendant Micael's act of simply signing off on

26   plaintiff's refusal to be treated by Micael, knowing that the removal of plaintiff's pins was

27   overdue, was deliberate indifference, particularly where plaintiff alleges Micael had an obligation

28   to inform her supervisor of his request.  Indeed, a reasonable juror could find that Micael's failure

                                                       21

1   to obtain an alternate medical professional, under these circumstances, was in retaliation for

2   plaintiff's PREA claim.  Given the pending PREA claim, plaintiff's refusal to see defendant

3   Micael differs from the refusal in <u>Zatko v. Rowland</u>, 835 F. Supp. 1174, 1178 (N.D. Cal. 1993),

4   where Mr. Zatko "refused the necessary treatments, was totally noncompliant, and otherwise

5   impeded his own recovery in numerous ways."  <u>Id.</u>  This case also differs from <u>McNeil v. Singh</u>,

6   2013 WL 1876127, at *19 n.59 (E.D. May 3, 2013) (where the prisoner had declined surgery on

7   at least two occasions and refused medication "because he felt that it was improper or medically

8   harmful").  Plaintiff has the right to refuse medical treatment, but his request for health care made

9   clear that he needed his pins removed, he was just refusing to be seen by defendant Micael due to

10  his pending appeals and complaints, which included a PREA claim against Micael.  Plaintiff is at

11  the mercy of prison medical staff to provide plaintiff with medical treatment.  Under ordinary

12  circumstances, plaintiff may not refuse to be treated and then claim the medical staff person was

13  deliberately indifferent.  But the circumstances here are different.  Plaintiff had pins implanted

14  during a surgical procedure and plaintiff was to return in two weeks to have the pins removed.

15  Plaintiff previously suffered two separate incidents where he was not timely returned for post-

16  surgical aftercare.  Arguably, plaintiff did not need to be seen by a prison RN; rather, he needed

17  to be returned to Dr. Lin for the pins to be removed, which Dr. Lin's medical record confirmed.

18  Whether or not defendant Micael was responsible for initially scheduling such appointment is not

19  the issue; Micael was put on notice by plaintiff's July 7, 2018 health care request form stating he

20  needed the pins removed immediately, and by July 11, 2018, when plaintiff refused to see Micael,

21  defendant Micael knew that the removal of the surgical pins was overdue.

22      While plaintiff does not expressly allege a chilling effect, such effect can be inferred by

23  his subsequent withdrawal of his PREA claim against defendant Micael.  Similarly, there can be

24  no legitimate penological reason for further delaying the removal of plaintiff's surgical pins.

25      Of course, on summary judgment defendant Micael may be able to provide evidence to

26  the contrary.  Indeed, defendant argues that plaintiff did not have a serious medical need because

27  he refused to be seen by defendant Micael.  But on a motion to dismiss, the undersigned takes

28  plaintiff's allegations as true and finds plaintiff sets forth sufficient facts to state cognizable First

1    and Eighth Amendment claims against defendant Micael at this stage of the proceedings.

2                        3.  Qualified Immunity

3            Plaintiff utterly failed to address defendant's claim to qualified immunity, merely stating

4    "We . . . don't believe that she has qualified immunity."  (ECF No. 121 at 2.)  Plaintiff's counsel

5    is cautioned that failure to counter a defendant's arguments in the future may result in a contrary

6    ruling.

7            On the other hand, defendant articulates her right to qualified immunity based on her view

8    that plaintiff's refusal of care bars him from stating a claim for deliberate indifference.  Plaintiff

9    relies on Cruzan by Cruzan v. Dir., Missouri Dep't of Health, 497 U.S. 261 (1990), which holds

10   that an inmate has a constitutional right to refuse medical treatment, and Zatko, 835 F. Supp. at

11   1178 (refusal of care bars deliberate indifference claim).

12           In § 1983 actions, qualified immunity "protects government officials from civil liability

13   where 'their conduct does not violate clearly established statutory or constitutional rights of

14   which a reasonable person would have known.'"  Cunningham v. Kramer, 178 F. Supp. 3d 999,

15   1003 (E.D. Cal. 2016) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  The doctrine

16   "gives government officials breathing room to make reasonable but mistaken judgments" and

17   "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Ashcroft v.

18   al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

19   Qualified immunity is an affirmative defense; the burden of pleading rests with the defendant.

20   Crawford-El v. Britton, 523 U.S. 574, 587 (1998) (citation omitted).

21           Taking plaintiff's allegations as true, plaintiff did not refuse medical treatment.  Rather, he

22   refused medical treatment by defendant Micael against whom plaintiff had a PREA claim

23   pending.  Therefore, the undersigned cannot conclude that qualified immunity is appropriate at

24   this stage in the proceedings.  Dismissal under Rule 12(b)(6) "is not appropriate unless [the court]

25   can determine, based on the complaint itself, that qualified immunity applies."  Id.; see also

26   Jensen v. City of Oxnard, 145 F.3d 1078, 1085 (9th Cir. 1998).  Defendant Micael's qualified

27   immunity argument is premised on the court accepting her view of the allegations and the refusal

28   form signed by plaintiff.  (ECF No. 114-12 at 1.)  At this stage in the proceedings, it is plaintiff's

                                            23

1  factual allegations that are taken as true, and plaintiff is given the benefit of every reasonable

2  inference from his factual allegations.  Cruz, 405 U.S. at 322; see also Retail Clerks Int'l Ass'n,

3  373 U.S. at 753 n.6.

4        Therefore, defendant's qualified immunity argument should be rejected at this early stage

5  of the litigation.  The issue of qualified immunity is premature and should be denied without

6  prejudice.

7  V.  Orders and Recommendations

8        Accordingly, IT IS HEREBY RECOMMENDED that:

9      1.  Defendant Lin's motion to dismiss (ECF No. 116) be granted;

10      2.  Defendant Lin be dismissed from this action with prejudice;

11      3.  Defendant Micael's motion to dismiss (ECF No. 118) be partially granted;

12      4.  Plaintiff's request for declaratory relief be dismissed;

13      5.  Plaintiff's claims against defendants based on their official capacities be dismissed;

14      6.  Defendant Micael's motion to dismiss plaintiff's Eighth and First Amendment claims

15  be denied;

16      7.  Defendant Micael's motion for qualified immunity be denied without prejudice; and

17      8.  Defendant Micael be directed to file a responsive pleading within twenty-one days.

18        These findings and recommendations are submitted to the United States District Judge

19  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen** days

20  after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

23  objections shall be filed and served within fourteen days after service of the objections.  The

24  parties are advised that failure to file objections within the specified time may waive the right to

25  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

26  Dated:  May 18, 2022

27  mcda1136.mtd.ac.lin

28
                                               KENDALL J. NEWMAN
                                               UNITED STATES MAGISTRATE JUDGE